Shane A. MacIntyre
BROWN LAW FIRM, P.C.
269 W. Front Street, Suite A
Missoula, MT 59802
Tel (406) 830-3248
Fax (406) 830-3745
smacintyre@brownfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| HANOVER INSURANCE GROUP, d/b/a HANOVER INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> ASPEN AMERICAN INSURANCE COMPANY; HENDRICKSON LAW FIRM, P.C. and KEVIN SWEENEY, <br><br> Defendants**.** | Cause No. <br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND** |

**COMES NOW**, the Hanover Insurance Group, d/b/a Hanover Insurance Company ("Hanover"), by and through its counsel of record, and for its Complaint for Declaratory Judgment states as follows:

1.      This is a claim for relief brought by Hanover under Montana's Uniform Declaratory Judgment Act seeking a declaration that Hanover does not owe a duty of defense or indemnity to the Hendrickson Law Firm, P.C. ("Hendrickson

Firm"), or Kevin Sweeney ("Sweeney") pursuant to a policy of insurance issued to the Hendrickson Firm by Hanover.

2.      Hanover seeks a declaration from this Court that Aspen American Insurance Company, ("Aspen") is obligated to reimburse Hanover for defense costs advanced relating to a lawsuit stemming from a claim advanced. The lawsuit was filed in Montana Thirteenth Judicial District Court, Cause No.: DV 20-0128.

## JURISDICTION AND VENUE

3.      Jurisdiction and venue are proper in this Court pursuant to Mont. Code Ann. §§ 25-2-118 and 121 because this is a civil matter and the defendant, the Hendrickson Firm, resides in Yellowstone County, Montana.

4.      Hanover Insurance Company is a Massachusetts corporation.

5.      Upon information and belief, Aspen American Insurance Company is a Texas corporation.

6.      The Hendrickson Law Firm, P.C., is a Montana Domestic Profit Corporation.

7.      Kevin Sweeney is an individual, and former attorney partner at the Hendrickson Firm, who on information and belief resides in Yellowstone County, Montana.

8.      There is a justiciable controversy between the parties concerning their rights and obligations under the applicable insurance policies.

## Factual Background

### A.    The Claim

9.    Hanover issued a Lawyers Professional Liability Insurance Policy, Policy No. LHC A353960 -02 (the "Policy"), to the Hendrickson Firm, with policy effective dates from July 1, 2016 to July 1, 2017.  This was a claims-made and reported policy.  A certified copy of the Policy is attached as **Exhibit A**.

10.    On June 30, 2017, Sweeney was issued a Montana Extended Reporting Period Endorsement – Individual, on account of his retirement. This endorsement is included with Exhibit A.

11.    Aspen then issued a Lawyers Professional Liability Insurance Policy, Policy No. LPP003153-03, to the Hendrickson Firm with effective dates of July 1, 2019 through July 1, 2020 ("Aspen Policy"). Upon information and belief, the initial Aspen Policy took effect on July 1, 2017.

12.    The rights and obligations under the Hanover Policy between Hanover and the Hendrickson Firm and Sweeney - including Hanover's duties to defend and indemnify the insureds, or rather, lack thereof - is the basis for this Declaratory Complaint.

13.    There is an underlying action that potentially implicate the parties' rights under the Hanover Policy. The lawsuit was filed in Montana Thirteenth

Judicial District Court, Cause No.: DV 20-0128, with the Complaint attached hereto as **Exhibit B**.

14.     Per the attached Complaint, the Hendrickson Firm and Sweeney were hired to act as counsel in relation to a line of credit transaction between TGC, LP and Vanity Shop.   Mr. Sweeney and the firm was supposed to ensure that the appropriate UCC financing statements were prepared and filed.

15.     The appropriate UCC statements were not filed at the time the transaction was executed, on or around August 27, 2013.

16.     In early 2017, Vanity Shop began preparing for bankruptcy.

17.     TGC retained the law firm of Kaler Doeling, PLLP ("Kaler") to assist with the impending bankruptcy.   In January 2017, Kaler discovered that the UCC filing statements that were supposed to have been used to secure TGC's interest in the Vanity Shop line of credit were never filed.

18.     Upon learning this information, Sweeney sent an email dated February 10, 2017 acknowledging his failure to timely file the UCC statements, and also acknowledging his own malpractice for the oversight.

19.     For purposes of the Hanover policy, the claim was "first made" no later than February 10, 2017.

20.     On June 30, 2017, a retirement extended reporting period endorsement pertaining to Sweeney took effect on the Policy issued by Hanover.

21.     On July 1, 2017, the Policy with Hanover expired.

22.     Even though Sweeney was on notice of the potential claim against him, said claim was not reported to Hanover at any time during the policy period.

23.     The claim was first reported to Hanover on December 2, 2019, roughly 30 months after the Hanover policy expired.

24.     Upon information and belief, the claim at issue was also reported to Aspen on or around December 2, 2019.

25.     The Hendrickson firm, along with its present and former members and employees, including Sweeney, is covered for professional liability claims under a policy of insurance issued by Aspen, Policy Number: LPP003153-03. This policy was in effect when the claim at issue was reported to Aspen.

26.     Based upon the plain language of the Hanover Policy, along with the underlying facts, Hanover issued a Reservation of Rights letter denying coverage, while still providing a defense under that reservation of rights.

27.     Hanover made its coverage position known to Aspen via copy of the Reservation of Rights letter.

28.     Hanover reiterated its position to Aspen while tendering the defense to Aspen in a letter dated January 27, 2020.

29.     On March 19, 2020, Hanover again reached out to Aspen via letter of that date requesting Aspen accept the tender of the defense of the claim made.

30.     Upon information and belief, Aspen has neither accepted the tender in this case, nor have they taken any position in writing as to whether they will defend or indemnify their insured(s) for the claims made.

31.     Aspen's refusal to provide a response to tender requests and requests for a coverage position are constructively a denial to defend.

**B.     The Hanover Policy**

32.     The Hanover Policy, attached as Exhibit A, contains the following relevant provisions:

\*\*\*

**A.  Coverage**

**1.  Professional Services Coverage**

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering of or failure to render **professional services**, provided that:

**a.**   The **wrongful act** must have first occurred on or after the applicable retroactive date(s)**;**

**b.  You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim,** prior to the effective date of this **policy**; and,

**c.**   The **claim** or **potential claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

\*\*\*

## H. CONDITIONS

\*\*\*

## 9. OTHER INSURANCE

**a.** If other valid and collectible insurance is available to **you** for **loss** covered under this **policy**, the insurance provided by this **policy** will be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

**b.** When this insurance is excess **we** have no duty to defend **you** against any **claim** if any other insurer has a duty to defend **you** against the **claim**. If no other insurer defends **we** will undertake to do so but **we** will be entitled to **your** rights against those other insurers.

**c.** When this insurance is excess over other insurance **we** will pay only **our** share of the amount of **loss**, if any, that exceeds the sum of:

**1)** The total amount that all such other insurance would pay for the **loss** in the absence of this insurance; and

**2)** The total of all deductibles, self-insurance and retentions under all that other insurance. **We** will share the remaining **loss**, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limit of Liability shown on the Declarations of this **policy**.

\*\*\*

Language from the endorsement pertaining to Sweeney is as follows:

## MONTANA EXTENDED REPORTING PERIOD ENDORSEMENT --- INDIVIDUAL

This endorsement applies only to **your wrongful acts** that occurred on or after the **retroactive date** shown in the Declarations and before the individual **extended reporting period** effective date shown below. **Claims** must first be made and first reported to **us** after the individual **extended reporting period** effective date and prior to the individual **extended reporting period**

expiration date shown below. However, if there is other insurance in effect on or after **your** individual **extended reporting period** effective date which covers **you** for such liability or **claim**, then that other insurance will render this coverage inapplicable, even thought he Limits of Liability of the other insurance may be inadequate to pay all **losses** or claims.

Relevant policy definitions are as follows:

## D. Definitions

**Claim** means:

1.　　A demand or suit for money or services **you** receive, including any arbitration proceedings to which **you** are required to submit or to which **you** have submitted with **our** consent;

2.　　When **you** first receive oral or written information or have knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services, including but not limited to when **you** first receive an oral or written request to notify **us** of a **potential claim**; or

3.　　When **you** first receive oral or written notification of any **disciplinary proceeding**.

\*\*\*

**Company** means the insurance company that issued this policy, as shown on the Declarations or referred to herein as **we**, **us**, or **our**.

\*\*\*

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim**.

## COUNT ONE

### Declaratory Judgment

33.　　Hanover re-pleads and incorporates by reference the allegations set forth in paragraphs 1-25 above.

34.     Hanover requests the Court determine the rights, obligations, and responsibilities of the parties under the Hanover Policy pursuant to Mont. Code Ann. §§ 27-8-201 et seq., with respect to insurance coverage for the various claims asserted against the Hendrickson Firm and Sweeney.

35.     Specifically, it appears, and Hanover requests the Court declare, that Hanover has no obligation to defend or indemnify the Hendrickson Firm, or Sweeney in the claim because:

  a.     The claim was not first made *and* reported in writing during the Hanover policy period;

  b.     There is other insurance available from Aspen for the loss potentially covered under the policy;

  c.     The claim is covered by other insurance, specifically the policy issued by Aspen;

  d.     Sweeney had notice of this claim *prior* to the Extended Reporting Period Endorsement's effective date;

  e.     If coverage for Sweeney under the Extended Reporting Period Endorsement is not barred due to his prior notice, the Aspen policy renders the Hanover Policy inapplicable due to the express language included in the Hanover Policy; and

f. Any other appropriate basis in the Policy or under Montana law as documented in discovery.

36. It also appears, and Hanover requests the Court to declare, that Hanover is entitled to reimbursement and/or recoupment from Aspen of any defense costs and fees related to the underlying claim in this case.

37. If it is determined by this Court that the Hanover Policy does in fact have any coverage applicable to the underlying claim, Hanover requests the Court determine that the Hanover Policy is excess and Hanover has not duty to pay defense costs, per the express language of the Policy.

**WHEREFORE**, Hanover requests the following relief by way of declaratory judgment:

1) That this Court fully and finally adjudge the rights of the parties under the Hanover Policy pursuant to Montana law and Mont. Code Ann. §§ 27-8-201, et seq., declaring that Hanover has no duty to defend or indemnify the Handrickson Firm or Sweeney under the Hanover Policy for the underlying claim;

2) That this Court fully and finally adjudge the rights of the parties under the Hanover Policy pursuant to Montana law and Mont. Code Ann. §§ 27-8-201, et seq., declaring that Aspen is obligated to reimburse Hanover for defense costs and fees incurred;

3) For its costs of suit; and

4) For such other declaratory relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Hanover hereby requests a trial by jury of all issues so triable.

DATED this 27th day of April, 2020.


BY    /s/ Shane A. MacIntyre

        Shane A. MacIntyre
        *Attorney for Plaintiff United States*
        *Fire Insurance Company*

# CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2020, a copy of the foregoing was served on the following persons by the following means:

| 1_____ | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| _____ | Mail | _____ | Overnight Delivery |

    1. Clerk, U.S. District Court

By:____/s/ Shane A. MacIntyre_____
Shane A. MacIntyre



*Hanover Professionals*
*DECLARATIONS*  <span style="color:green">*Advantage Portfolio*</span>

*THIS IS A CLAIMS-MADE POLICY.  PLEASE READ THE POLICY CAREFULLY.*

## LAWYERS PROFESSIONAL LIABILITY POLICY

| Policy Number | Coverage is provided by: | Agency | Agency Code |
|---|---|---|---|
| LHC A353960 02 | HANOVER INSURANCE COMPANY<br>440 LINCOLN STREET<br>WORCESTER, MA 01653 | ECC INSURANCE BROKERS INC | 1304139 |

**Issue Date:** 07/17/2017
**Change Description:** retirement ERP for Kevin Sweeney  eff 6/30/2017

**Item 1. Named Insured and Address**:

THE HENDRICKSON LAW FIRM, P.C.
208 NORTH BROADWAY
SUITE 324
BILLINGS, MT  59103

**Item 2. Policy Period:**
Inception Date:  07/01/2016
Expiration Date: 07/01/2017
Endorsement Effective Date: 06/30/2017
12:01 A.M. Standard Time at the address of the **named insured** as stated herein.

**Item 3. LIMIT OF LIABILITY:**
    **a.** $3,000,000    for each **claim**; not to exceed
    **b.** $3,000,000    for all **claims** in the Aggregate

**Item 4. DEDUCTIBLE:**    $15,000  each **claim**        N/A  Aggregate

**Item 5. RETROACTIVE DATE:**  07/01/1985

**Item 6. PREMIUM FOR THE POLICY PERIOD:**
**Policy Coverage Premium: $22,595.00**
**Revised Annual Premium:** $22,595
**Additional/Return Premium:** $0

    **Total Amount:**  $0.00

**Item 8. Forms attached at Issue:**

| | | |
|---|---|---|
| 401-1268 | (08-12) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") |
| 913-0001 | (07-10) | Lawyers Professional Liability Policy |
| 913-0034 | (03-14) | Certain Claim Expenses In Addition To Policy Limits Endorsement |
| 913-0048 | (03-14) | First Dollar Defense With No Sublimit Endorsement |
| 913-0091 | (03-11) | Claim Reporting Guidelines |
| 913-0095 | (07-10) | ERP Policy Holder Notice |
| 913-0139 | (07-10) | Montana LPL State Amendatory Endorsement |
| SIG-1100 | (08-14) | Signature Page |

**Item 9. Forms attached by Endorsement:**

| | | |
|---|---|---|
| 913-0045MT | (07-10) | MT ERP Endorsement - Individual |

**EXHIBIT
A**

**Item 10. Producer Name and Address:**

ECC INSURANCE BROKERS INC
ONE TOWER LANE STE 2850 OAKBROOK TERRACE IL 60181



<u>**U.S. TREASURY DEPARTMENT'S**</u>
<u>**OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")**</u>

<u>**ADVISORY NOTICE TO POLICYHOLDERS**</u>

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site: http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.

# LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

## TABLE OF CONTENTS

A.  COVERAGE ............................................................................................................................ 2
B.  DEFENSE, SETTLEMENT & EXHAUSTION OF LIMITS (INCLUDED IN THE LIMIT OF LIABILITY) 3
C.  LIMIT OF LIABILITY AND DEDUCTIBLE ............................................................................... 3
   1.  LIMIT OF LIABILITY ...................................................................................................... 3
   2.  DEDUCTIBLE ................................................................................................................ 4
   3.  AGGREGATE DEDUCTIBLE .......................................................................................... 4
   4.  REIMBURSEMENT ........................................................................................................ 4
D.  DEFINITIONS ........................................................................................................................ 4
E.  EXCLUSIONS ........................................................................................................................ 7
F.  EXTENDED REPORTING PERIOD ......................................................................................... 8
   1.  AUTOMATIC EXTENDED REPORTING PERIOD ........................................................... 8
   2.  OPTIONAL EXTENDED REPORTING PERIOD .............................................................. 8
   3.  DEATH OR DISABILITY EXTENDED REPORTING PERIOD ............................................ 9
   4.  RETIREMENT EXTENDED REPORTING PERIOD .......................................................... 9
   5.  LOSS, SUSPENSION, REVOCATION OR SURRENDER OF YOUR LICENSE ...................... 9
G.  DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S) ........................................... 9
   1.  NOTICE OF CLAIM OR DISCIPLINARY PROCEEDING ................................................... 9
   2.  NOTICE OF POTENTIAL CLAIM OR DISCIPLINARY PROCEEDING ................................. 9
H.  CONDITIONS ...................................................................................................................... 10
   1.  CANCELLATION AND NON RENEWAL ........................................................................ 10
   2.  REPRESENTATIONS AND APPLICATION ..................................................................... 10
   3.  LEGAL ACTION AGAINST US ...................................................................................... 10
   4.  MATERIAL CHANGE ................................................................................................... 10
   5.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US ................................ 11
   6.  ASSIGNMENT ............................................................................................................ 11
   7.  SOLE AGENT FOR THE INSURED ................................................................................ 11
   8.  COVERAGE TERRITORY AND VALUATION .................................................................. 11
   9.  OTHER INSURANCE .................................................................................................... 11
   10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US .. 11
   11. ALLOCATION ............................................................................................................. 12
   12. SEPARATION OF INSUREDS ....................................................................................... 12
   13. CONFORMANCE TO STATUTE .................................................................................... 12
   14. SECTION TITLES ........................................................................................................ 12
   15. INNOCENT INSUREDS ................................................................................................ 12
   16. POLICY DISPUTES ...................................................................................................... 12
   17. BANKRUPTCY ............................................................................................................ 12
   18. LIBERALIZATION ........................................................................................................ 12
   19. NOTICES ................................................................................................................... 13

**LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY**

This is a CLAIMS-MADE AND REPORTED policy. Subject to the terms, conditions, exclusions and limitations of this policy, coverage is limited to liability for only those claims that are first made against you and reported to us in writing after the retroactive date and during the policy period or any optional extended reporting period, if exercised by you.

This is a "defense within limits" policy with claim expenses included within the Limit of Liability. The Limit of Liability available to pay damages will be reduced by amounts we pay for claim expenses as defined in the policy. Further note that amounts incurred for claim expenses and damages are subject to the deductible. Please read this policy carefully.

Throughout this **policy**, the terms **we**, **us** and **our** refer to the **company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this **policy**. Other terms in bold print have special meaning and are defined in the **policy**.

## A. COVERAGE

### 1. Professional Services Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering of or failure to render **professional services**, provided that:

**a.** The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

**b.** **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this **policy**; and,

**c.** The **claim** or **potential claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

### 2. Disciplinary Proceedings Coverage

**We** will pay up to $25,000 in **disciplinary proceeding expenses** per **policy period**, regardless of the number of **disciplinary proceedings** commenced against **you** and reported to **us** in writing during the **policy period,** subject to the following:

**a.** **We** will not pay any **damages** incurred as a result of **disciplinary proceedings**;

**b.** The coverage provided under this section only applies to **you** if **you** are a partner, limited liability company member, officer, director, stockholder or employee of the **named insured** at the time **you** report the investigation or proceeding;

**c.** There will be no **extended reporting period** for the coverage provided in this section;

**d.** Any payment made hereunder will not be subject to the deductible and will not reduce any applicable Limit of Liability.

For purposes of this section, reporting a preliminary investigation or a request for an investigation will be considered the same as reporting a **disciplinary proceeding**. However, **we** have no obligation under this section until the reported investigation is elevated to a **disciplinary proceeding**.

### 3. Employment Practices Liability – Defense Coverage

**We** will pay up to $10,000 per **policy period**, regardless of the number of **claims** made or the number of persons making the **claims**, for the reasonable fees of a lawyer assigned by **us** or, with **our** written consent, by **you** to defend **you** against **claims** commenced against **you** and reported to **us** in writing during the **policy period**, arising out of **employment practices** solely while acting on behalf of the **named insured** or **predecessor firm**, subject to the following:

**a.** The **claim** must not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, unemployment, or wage and hour violation;

**b.** The **claim** must not arise out of ownership of the **named insured** or **predecessor firm**;

**c.** The **claim** must not otherwise be excluded by this **policy**;

**d.** **We** will not pay any **damages** incurred as a result of an **employment practices claim**;

**e.** The coverage provided under this section only applies to **you** if **you** are a partner, limited liability company member, officer, director, stockholder or employee of the **named insured** at the time **you** report the investigation or proceeding;

**f.** There will be no **extended reporting period** for the coverage provided in this section; and

**g.** Any payment made hereunder will not be subject to the deductible and will not reduce any applicable Limit of Liability.

**4. Subpoena Assistance Coverage**

In the event **you** receive a subpoena for documents or testimony arising out of **professional services**, and **you** would like **our** assistance in responding to the subpoena, **you** may provide **us** with a copy of the subpoena, and **we** at **our** sole discretion may retain an attorney to provide advice regarding the production of documents, to prepare **you** for sworn testimony, and to represent **you** at any related deposition of **you**, provided that:

**a.** The subpoena arises out of a lawsuit to which **you** are not a party; and

**b.** **You** have not been engaged to provide advice or testimony in connection with the lawsuit, nor have **you** provided such advice or testimony in the past.

If **we** retain an attorney pursuant to the above, **we** will pay such attorney's legal fees and costs. Such payments are included in the Limit of Liability and are subject to the deductible. Any notice **you** give to **us** of such subpoena will be deemed notification of a **potential claim**.

**5. Pre-claim Assistance**

Until the date a **claim** is made, **we** will pay all costs or expenses **we** incur at **our** sole discretion as a result of investigating a **potential claim** that **you** report to **us**. Such payments are included in the Limit of Liability and are subject to the deductible.

## B. DEFENSE, SETTLEMENT & EXHAUSTION OF LIMITS (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right to appoint counsel, and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **You** may recommend counsel to **us**. **We** may accept that recommendation of counsel and such acceptance will not be unreasonably withheld, provided such counsel agrees to comply with **our** litigation management guidelines and agrees to accept **our** hourly fee payment. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

Payment of **claim expenses** will reduce the amounts available to pay **damages**. **Our** duty to defend any **claim** or pay any amount as **damages** or **claim expenses** will cease when **our** Limit of Liability has been exhausted. Upon exhaustion of the Limit of Liability, **we** will tender control of the defense to the **named insured**. The **named insured** agrees to accept this tender of defense.

**We** will not settle a **claim** without the consent of the **named insured**, which will not be unreasonably withheld. If the **named insured** refuses to consent to a settlement **we** recommend that is acceptable to the claimant, then **our** liability for the **claim** will not exceed the amount for which the **claim** could have been settled, plus the **claim expenses** incurred up to the date of such refusal, or the applicable Limit of Liability, whichever is less. After the time of the **named insured's** refusal, **we** will have the right to withdraw from further defense of the **claim** by tendering control of the defense to the **named insured** who will be responsible for all **damages** and **claims expenses** incurred thereafter. For the purpose of this section, settlement includes, but is not limited to, any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

The **named insured** is responsible for any fees or costs charged by a lawyer defending **you** or any other expenses incurred without **our** written consent.

## C. LIMIT OF LIABILITY AND DEDUCTIBLE

**1. LIMIT OF LIABILITY**

The Limit of Liability shown in the Declarations for each **claim** is the most **we** will pay for the sum of all **damages** and **claim expenses** arising out of a single **claim** or a series of **related claims**, regardless of the number of persons or entities insured under this **policy**, number of **claims** made or the number of persons or entities making **claims** during the **policy period** or during any **extended reporting period**, if any.

If **related claims** are subsequently made against **you** and reported to **us**, all such **related claims**, whenever made, will be considered a single **claim** first made and reported to **us** within the **policy period** in which the earliest of the **related claims** was first made and reported to **us**.

The Limit of Liability shown in the Declarations as the Aggregate Limit of Liability is the most **we** will pay for the sum of all **damages** and **claim expenses** for all **claims** under this **policy**.

2. **DEDUCTIBLE**

    **a.** **You** will pay the deductible amount shown in the Declarations. The deductible applies to each **claim** and to all **claims expenses** and **damages**; however, the first $10,000 of **claims expenses** incurred during the **policy period** will not be applied to **your** deductible. Each of **you** is jointly and severally liable for these payments, regardless of **your** individual business arrangements. **We** will not be required to make any payment for **claim expenses**, settlements reached, or judgments rendered in an otherwise covered **claim** unless and until **you** have paid the deductible in full. **You** must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which **you** and **we** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

    **b.** All **claim expenses** will first be subtracted from the Limit of Liability, with the remainder, if any, being the amount available to pay for **damages** after **you** have paid the deductible in Paragraph **a.** above.

    **c.** If **you** and **we** agree to use **mediation** to resolve any **claim** brought against **you** and if the **claim** is resolved by **mediation** within sixty (60) days after **you** receive the suit or demand, **your** deductible obligation for that **claim** will be reduced by 50%. The maximum amount of any reduction is $10,000.

3. **AGGREGATE DEDUCTIBLE**

The Aggregate Deductible amount will be shown in the Declarations if applicable and is the most **you** will pay for the sum of all **claims expenses** and **damages** for all **claims** first made and reported to **us** during the **policy period**.

4. **REIMBURSEMENT**

**You** will be liable for amounts **we** have paid in settlement of **claims** or satisfaction of judgments in excess of the Limit of Liability. In the event that **we** voluntarily choose or are compelled by a court of law to make any payment for **claims expenses** or **damages** and request reimbursement from **you**, the reimbursement is payable immediately upon written demand but no later than thirty (30) days after written demand.

In the event that **we** voluntarily choose or are compelled by a court of law to make any payment for the deductible and request reimbursement from **you**, the reimbursement is payable immediately upon written demand but no later than thirty (30) days after written demand.

D. **DEFINITIONS**

**Claim** means:

    **1.** A demand or suit for money or services **you** receive, including any arbitration proceedings to which **you** are required to submit or to which **you** have submitted with **our** consent;

    **2.** When **you** first receive oral or written information or have knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services, including but not limited to when **you** first receive an oral or written request to notify **us** of a **potential claim**; or

    **3.** When **you** first receive oral or written notification of any **disciplinary proceeding**.

**Claim expenses** means all expenses **we** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **claim**. These expenses include fees charged by a lawyer, mediator or arbitrator with **our** consent for which **you** are obligated. **Claim expenses** also means premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **company** to apply for or furnish any such bond. **Claim expenses** does not include salaries, wages, fees, overhead or benefit expenses associated with **our** employees, or with any **insured** or **insured's** employees.

**Company** means the insurance company that issued this **policy**, as shown on the Declarations or referred to herein as **we**, **us**, or **our**.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes pre-judgment interest; and post judgment interest that accrues after entry of judgment and before **we**

have paid, offered to pay or deposited in court that part of the judgment within the applicable Limit of Liability.

**Damages** does not include fines, sanctions, or punitive or exemplary damages or the multiple portions thereof.

**Damages** does not include any costs or expenses in complying with any demand for or award of **equitable relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

**Damages** does not include any costs or expenses relating to **your**:

**1.** Return, restitution or reduction of professional fees;

**2.** Fees owed from third parties;

**3.** Fees to third parties; or

**4.** Correcting, re-performing or completing any **professional services**.

**Disciplinary proceeding expenses** means all expenses **we** or, with **our** prior written consent, **you** incur in investigation, defense or appeal of any **disciplinary proceeding**.

**Disciplinary proceeding** means any formal administrative or regulatory proceeding by a disciplinary official or agency based on a finding of probable cause to prosecute charges alleging professional misconduct or ethical violations in the performance of **your professional services**.

**Employment practices** means any actual or alleged:

**1.** Wrongful termination of the employment of, or demotion of, or failure or refusal to hire or promote any person in violation of law or in breach of any agreement to commence or continue employment;

**2.** Unlawful employment discrimination;

**3.** Sexual harassment of an employee or applicant for employment; or

**4.** Retaliatory treatment against an employee on account of that employee's exercise or attempted exercise of his or her rights under law.

**Equitable relief** means a remedy not involving the payment of monetary **damages**.

**Extended reporting period** means an additional period of time for reporting **claim(s)**. The **extended reporting period** starts on the **policy termination date** and ends at the **extended reporting period** expiration date.

**Insured** means:

**1.** The **named insured** or any **predecessor firm**; or

**2.** Any lawyer, partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or employee of the **named insured** during the **policy period** shown in the Declarations solely while acting in a professional capacity on behalf of the **named insured** or a **predecessor firm**; or

**3.** Any lawyer, partnership, professional corporation, professional association, limited liability company or limited liability partnership who was a partner, officer, director, stockholder-employee, associate, manager, member or employee of the **named insured** or a **predecessor firm** solely while acting in a professional capacity on behalf of the **named insured** or a **predecessor firm**; or

**4.** Any non-lawyer who was or is an employee or independent contractor of the **named insured** or a **predecessor firm** solely while acting on behalf of the **named insured** or a **predecessor firm**; or

**5.** Any Of Counsel or contracted lawyer who is or was formerly covered under a policy held by the **named insured**, but solely while acting in a professional capacity on the **named insured's** behalf; or

**6.** The **named insured's** heirs, assigns, spouse or domestic partner, and legal representatives in the event of the **named insured's** death, incapacity or bankruptcy to the extent that the **named insured** would have been covered.

**Loss** means **claim expenses**, **damages** and **disciplinary proceeding expenses** and does not include **equitable relief**.

**Material change** means:

**1.** A fifteen percent (15%) increase or decrease in the total number of individuals covered by this **policy**, as shown on the application, however, this will not pertain to any **named insured** which has six (6) or

fewer lawyers who meet the definition of **insured** as of the date as set forth in the application;

**2.** Any mergers, acquisitions, spin-offs, dissolutions or splits involving the **named insured**; or

**3.** Financial impairment of the **named insured**, including but not limited to the appointment of a receiver, conservator, liquidator, or trustee for the **named insured**, or if under the bankruptcy laws, the **named insured** has become a debtor in possession.

**Mediation** means the non-binding intervention of a qualified neutral third party to resolve disputes between **you** and the other party(ies) to a **claim** who is chosen by **you** and the other party(ies) to a **claim** with agreement by **us**.

**Named insured** means the individual, entity, partnership, or corporation designated as such on the Declarations.

**Personal injury** means:

**1.** False arrest, detention or imprisonment;

**2.** Wrongful entry, eviction or other invasion of private occupancy;

**3.** Malicious prosecution;

**4.** Abuse of process;

**5.** The publication or utterance of libel, slander or other defamatory or disparaging material; or

**6.** A publication in violation of a person's right of privacy; and

arising out of a **wrongful act** in **your** rendering of or failure to render **professional services**.

**Policy** means this policy form, the Declarations, and any endorsement to the policy issued by **us,** and **your** application, including all supplements.

**Policy period** means the period from the effective date of the **policy** to the **policy termination date**.

**Policy termination date** means the expiration date of the **policy** as shown on the Declarations or the cancellation date of the **policy**, if applicable, whichever is earlier.

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim**.

**Predecessor firm** means any law firm or legal entity that was engaged in the private practice of law and to whose financial assets and liabilities the **named insured** is the majority successor (more than 50%) in interest.

**Professional services** means:

**1.** Services **you** render as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver, executor, guardian, trustee, or in any similar fiduciary capacity, but only if the services **you** render are those ordinarily performed by a lawyer;

**2.** Services (including title opinions or title certifications) **you** perform for others for a fee as a title insurance agent, title abstractor, title searcher, escrow agent, or closing agent;

**3.** Services **you** render as a lawyer as a mediator or arbitrator, speaker, author of legal treatises or lobbyist;

**4.** **Your** activities as a member of a formal accreditation, ethics, peer review, licensing board, standards review, bar association or similar professional board or committee; and

**5.** Pro-bono services in any of the above capacities which are performed with the knowledge and consent of the **named insured.**

**Professional services** does not include:

**1.** Services **you** provide as a public official or an employee or representative of a governmental body, subdivision or agency. This exclusion does not apply if **your** status is due only to the legal services **you** render under contract;

**2.** Services **you** provide as a notary in which **you** provide notarization without the signor being present;

**3.** Services **you** provide in relation to or as the promoter, seller or solicitor of securities, real estate, or other investments; or

**4.** Any of **your** activities as a Certified Public Accountant, Insurance Broker or Agent, or Real Estate Broker or Agent.

**Related wrongful acts** means all **wrongful acts** in the rendering of **professional services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Related claims** mean all **claims** arising out of a single or series of **wrongful acts** or arising out of **related wrongful acts** in the rendering of **professional services**.

**Retroactive date** refers to the date shown on the Declarations for the **named insured** firm. **Wrongful acts** that occurred prior to the **retroactive date** are not covered by this **policy**.

**Totally and permanently disabled** means that an **insured** is so disabled as to be wholly prevented from rendering **professional services** provided that such disability:

1. Has existed continuously for not less than six (6) months; and

2. Is reasonably expected to be continuous and permanent.

**Wrongful act** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**.

## E. EXCLUSIONS

This **policy** does not apply to **claim(s)**:

1. Based upon or arising out of, or relating directly or indirectly to:

   a. Any **insured** committing any intentional, dishonest, criminal, malicious or fraudulent act or omission;

   b. Any **insured** gaining any profit, remuneration or advantage to which such **insured** was not legally entitled; or

   c. **Personal injury**, however, **we** will provide for the defense of **claims** alleging **personal injury** arising out of **your** performance of **professional services**.

   The above exclusions will not apply until a final adjudication establishes **a., b.,** or **c.** above;

   d. Any breach of fiduciary duty including:

   Any breach of responsibility, or obligation, or alleging activities **you** performed in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein; or

   Any breach by a former, existing or prospective officer, director, shareholder, partner, manager, member, or trustee of any entity including pension, welfare, profit-sharing, mutual or investment fund or trust, if such entity is not named in the Declarations. However, this exclusion does not apply if **you** are deemed to be a fiduciary solely because of legal advice rendered or that should have been rendered with respect to an employee benefit plan;

   e. Any **loss** sustained by an **insured** or **claim** made against an **insured** as beneficiary or distributee of any trust or estate;

   f. Any defects in title of which **you** had knowledge at the date of issuance of such title insurance but failed to disclose to the title insurance company; or any breach of underwriting authority in **your** capacity as a title insurance agent;

   g. Any liability **you** assume under any contract or agreement; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

   h. Any actual or alleged conversion, commingling, defalcation, misappropriation, intentional or illegal use of funds, monies or property; or inability or failure to pay or collect any funds, notes, drafts, or other negotiable instruments; or any resulting deficiency or default;

2. Arising out of or based upon:

   a. Any **employment practices** or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy, or any other basis prohibited by law; however, this exclusion does not apply to coverage in **SECTION A.3.**; or

   b. **Your** sexual contact or conduct or the threat of sexual contact or conduct;

3. Arising out of a **claim** by any **insured** under this **policy** against any other **insured** under this **policy** unless the **claim** arises from **professional services** rendered by one **insured** to another **insured** as a

client;

4. Arising out of or made by any entity not named in the Declarations in which **you**:

    a. Hold an interest of more than 5% if a publicly traded company or more than 15% if a privately owned entity as a partner, member, principal or stockholder; or

    b. Are an employee; or

    c. Directly control, operate or manage.

    This exclusion will not apply to any **claim** by a non-profit entity for which **you** are a director, officer or trustee; or

5. Arising solely out of:

    a. A **wrongful act** of any person or entity with whom the **named insured** shares a common office space at the **named insured's** premises and who is not an **insured** under this **policy**; or

    b. Any **claim** made against **you** if the **claim** arises solely out of an act, error or omission of any other person or lawyer who is not an **insured** as defined in this **policy**, including but not limited to **claims** based upon theories of partnership by estoppel, apparent partnership, apparent agency, ostensible agency, vicarious liability and/or any similar theory.

## F. EXTENDED REPORTING PERIOD

### 1. AUTOMATIC EXTENDED REPORTING PERIOD

**You** will be entitled to an automatic **extended reporting period** for no additional premium. This extension is applicable to any **claim** made against **you** during the **policy period** and reported to **us** in writing during the sixty (60) days immediately following the **policy termination date**. This automatic **extended reporting period** applies only to **SECTION A.1. Professional Services Coverage**.

### 2. OPTIONAL EXTENDED REPORTING PERIOD

**We** will provide an optional **extended reporting period** as described below:

    a. If this **policy** is canceled, terminated or nonrenewed, **you** will have the right, upon payment of an additional premium, to an extension of the reporting period for any **claim** against **you** first made and reported after the date upon which the **policy period** ends, but only with respect to **wrongful acts** committed after the applicable **retroactive date** and prior to the end of the **policy period** and otherwise covered by this **policy**. Such period will be referred to as the optional **extended reporting period**.

        1) The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans in effect in **your** state on the date this **policy** was issued or last renewed.

        2) **You** must request the optional **extended reporting period** in writing and must pay **us** the additional premium within sixty (60) days following the date of such cancellation, termination or nonrenewal. If **we** do not receive **your** request and premium payment within sixty (60) days following the date of such cancellation, termination or nonrenewal, **your** right to purchase the optional **extended reporting period** will cease.

        3) If **we** cancel for non-payment of premium, **you** may purchase the optional **extended reporting period** only after any earned premium due **us** is paid within ten (10) days after the date of cancellation or **policy** expiration, whichever comes first.

    b. All premiums paid for an optional **extended reporting period** will be deemed fully earned as of the first day of the optional **extended reporting period**. The optional **extended reporting period** may not be canceled.

    c. The optional **extended reporting period** will not increase any Limit of Liability stated in the Declarations. For the purpose of **policy** limits, the reporting periods are part of, not in addition to, the **policy period**.

If there is other valid and collectible insurance that would apply to a **loss** reported during the **extended reporting period**, then coverage under this section will not apply, even though the Limit of Liability for the other insurance may be inadequate to pay all **damages** and **claim expenses**. This optional **extended reporting period** applies only to **SECTION A.1. Professional Services Coverage**.

3. **DEATH OR DISABILITY EXTENDED REPORTING PERIOD**

If **you** die or become **totally and permanently disabled**, do not have any other available insurance coverage and meet **our** eligibility requirements, **we** will issue an **extended reporting period** endorsement of unlimited duration without cost to **you,** provided:

**a.** Death was not caused by a self-inflicted injury or misuse or abuse of any substance.

**b.** The total and permanent disability is established after the effective date of the **policy**. The disability must be a result of accidental bodily injury, physical illness or disease, and not arise out of any self-inflicted injury or attempted suicide, or the abuse of intoxicants or controlled substances. **Your** inability to practice law must be certified in writing by a physician acceptable to **us**.

4. **RETIREMENT EXTENDED REPORTING PERIOD**

If **you** have retired completely from the practice of law, been continuously insured with **us** for the immediately preceding three (3) years, and have reached the age of 55, **we** will issue an **extended reporting period** endorsement of unlimited duration without cost to **you**.

5. **LOSS, SUSPENSION, REVOCATION OR SURRENDER OF YOUR LICENSE**

If **you** leave the practice of law as a result of loss, suspension, revocation or surrender of **your** license because of threatened, pending or actual disciplinary action, **you** are not eligible to purchase or receive an **extended reporting period** endorsement. If **you** have a solo practice when **you** lose **your** license, then neither the firm nor **you** are eligible to purchase or receive an **extended reporting period** endorsement.

## G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)

1. **NOTICE OF CLAIM OR DISCIPLINARY PROCEEDING**

**a.** If **you** receive notice of a **claim** or **disciplinary proceeding**, **you** and any other involved **insured(s)** must provide to **us** written notice of the **claim** or **disciplinary proceeding**, with full details including the date received, the claimant's name and address, the dates and nature of retention, and the alleged **wrongful act** as soon as practicable, but in no event later than sixty (60) days after such **claim** or **disciplinary proceeding** is first made.

**b.** **You** and any other involved **insured** must:

1) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **claim** or **disciplinary proceeding**;

2) Authorize **us** to obtain records and other information;

3) Cooperate with **us** in the investigation, defense or settlement of the **claim** or **disciplinary proceeding**;

4) Cooperate with **us** in the investigation of coverage for the **claim** or **disciplinary proceeding**; and

5) Assist **us**, upon **our** request, in the enforcement of any right against any person or entity which may be liable to **you** because of **damages** to which this insurance may apply.

**c.** No **insured** will, except at that **insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **claim** or **disciplinary proceeding** without **our** consent.

2. **NOTICE OF POTENTIAL CLAIM OR DISCIPLINARY PROCEEDING**

**a.** If, during the **policy period**, **you** become aware of a **wrongful act** or any facts or other circumstance that occurred on or after the **retroactive date** but prior to the end of the **policy period** which may reasonably be expected to subsequently give rise to a **claim** or **disciplinary proceeding** against **you**, **you** must give **us** written notice as soon as practicable of the **potential claim** or **disciplinary proceeding**, but in any event not later than the end of the **policy period** or any **extended reporting period,** if applicable. To the extent possible notice should include:

1) Where the **wrongful act** took place and any facts or circumstance concerning the **wrongful act**; and

2) The names and addresses of any persons and entities involved.

**b.** Any **claim** or **disciplinary proceeding** arising out of the **wrongful act**, facts or circumstance which is subsequently made against **you** will be deemed to have been first made at the time **we** received such written notice of the **potential claim** or **disciplinary proceeding** from **you**, if **we** receive proper

notice of the **potential claim** or **disciplinary proceeding** according to Paragraph **a.** above.

## H. CONDITIONS

### 1. CANCELLATION AND NON RENEWAL

**a.** **We** may cancel this **policy** by mailing to the **named insured's** last known address, with postage fully prepaid:

    **1)** Ten (10) days' written notice of cancellation for nonpayment of premium or deductible; or

    **2)** Thirty (30) days' written notice of cancellation for reasons other than nonpayment of premium; and

    **3)** Whether or not **we** offer a return of unearned paid premium or assessment.

**b.** The **named insured** may cancel this **policy** for itself and all other **insureds** by written notice to **us** stating when thereafter the cancellation will be effective. If this **policy** is cancelled, earned premium will be computed in accordance with the customary short rate proportion of the premium.

**c.** **We** are not required to renew this **policy**. However, **we** will send written notice of **our** intent to nonrenew this **policy** to the **named insured** at least (thirty) 30 days prior to expiration of the **policy period**. **We** will extend the period of coverage of the current **policy** at the expiring premium to comply with this notice requirement. The earned premium for any period of coverage beyond the expiration date will be considered pro rata based upon the rates in effect at the inception date of the expiring **policy**.

**d.** **We** will not amend the **retroactive date(s)** during a period of continuous coverage.

### 2. REPRESENTATIONS AND APPLICATION

By accepting this **policy you** agree that:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based on representations **you** made in **your** application for this insurance **policy**;

**c.** The representations made in **your** application are the basis of this **policy** and are to be considered as incorporated into and constituting a part of this **policy**;

**d.** Those representations are material to the acceptance of the risk **we** assumed under this **policy**;

**e.** **We** have issued this **policy** in reliance upon the truth, accuracy and completeness of such representations;

**f.** The application will be interpreted as a separate application for coverage by each **insured**. No statement in the application, fact pertaining to or knowledge possessed by any **insured** will be imputed to any other **insured** for the purpose of determining if coverage is available; and

**g.** Statements in the application, facts pertaining to or knowledge possessed by the individual signing the application will be imputed to the **named insured**.

### 3. LEGAL ACTION AGAINST US

No person or entity has a right under this **policy**:

**a.** To join **us** as a party or otherwise bring **us** into a suit asking for **damages** from an **insured**; or

**b.** To sue **us** on this **policy** unless all of its terms have been fully complied with.

A person or entity may sue **us** to recover on an agreed settlement or on a final judgment against an **insured**; but **we** will not be liable for **damages** that are not payable under the terms of this **policy** or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

### 4. MATERIAL CHANGE

If during the **policy period** a **material change** occurs, **you** will notify **us** of the **material change** as soon as practicable, but not later than thirty (30) days after the effective date of the **material change,** and provide such additional information as **we** require. **We** will have the right to amend the terms and conditions of this **policy** according to **our** existing approved rates, rules and rating plans.

5. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If **you** have rights to recover all or part of any payment **we** have made under this **policy**, these rights are transferred to **us**. **You** must do nothing after a **loss** to impair **our** rights to seek or obtain recovery from others. At **our** request, **you** will sue those responsible or transfer those rights to **us** and help **us** enforce them. In the event of any payment under this **policy**, **we** will be subrogated to the extent of such payment to all of **your** rights of recovery. **You** will execute and deliver such instruments and papers and do whatever else is necessary to secure such rights and will do nothing to prejudice or compromise such rights without **our** express written consent.

6. **ASSIGNMENT**

No change in, modification of or assignment of interest in this **policy** will be effective except when made by a written endorsement to the **policy**.

7. **SOLE AGENT FOR THE INSURED**

By accepting this **policy**, **you** agree that only the **named insured** is authorized to act on behalf of all **insureds** with respect to the following: consenting to settlement or releasing rights under this **policy**, payment for premiums, receiving return premiums, giving or receiving notice of cancellation or nonrenewal, requesting any optional **extended reporting period** and agreeing to any changes in this insurance **policy**. Each **insured** agrees that the **named insured** will act on its or their behalf with respect to such matters.

8. **COVERAGE TERRITORY AND VALUATION**

   a. This **policy** applies to a **wrongful act** committed anywhere in the world, provided that the **claim** is made and suit is brought against the **insured** within the United States, its territories or possessions or Canada.

   b. All premiums, limits, deductibles, **loss** and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of **loss** under this **policy** is stated in a currency other than the United States of America dollars, payment under this **policy** will be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of **loss** is due, respectively.

9. **OTHER INSURANCE**

   a. If other valid and collectible insurance is available to **you** for **loss** covered under this **policy**, the insurance provided by this **policy** will be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

   b. When this insurance is excess **we** have no duty to defend **you** against any **claim** if any other insurer has a duty to defend **you** against the **claim**. If no other insurer defends **we** will undertake to do so but **we** will be entitled to **your** rights against those other insurers.

   c. When this insurance is excess over other insurance **we** will pay only **our** share of the amount of **loss**, if any, that exceeds the sum of:

      1) The total amount that all such other insurance would pay for the **loss** in the absence of this insurance; and

      2) The total of all deductibles, self-insurance and retentions under all that other insurance.

   **We** will share the remaining **loss**, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limit of Liability shown on the Declarations of this **policy**.

10. **TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US**

It is **our** stated intention that this **policy** and any other **policy**, coverage part or endorsement issued by **us**, or by another member of the Hanover Insurance Group will not provide duplication or overlap of coverage for the same **claim**. If this **policy** and any other **policy** issued by **us**, or by another member of the Hanover Insurance Group, to **you**, apply to the same **claim**, then, **Condition 9. Other Insurance** notwithstanding:

   a. **We** will not be liable under this **policy** for a greater proportion of the **loss** than the applicable Limit of Liability of this **policy** bears to the sum of the total Limits of Liability of all such policies; and

**b.** The maximum amount payable under all such policies combined will not exceed the highest applicable Limit of Liability under any one **policy**.

## 11. ALLOCATION

If **you** incur both **loss** covered by this **policy** and **loss** not covered by this **policy** on account of any **claim** because such **claim** includes both covered and non-covered matters, coverage with respect to such **claim** will apply as follows:

**a.** 100 percent of **claim expenses** on account of the **claim** will be considered covered **loss**; and

**b.** **We** will fairly allocate all remaining **loss** that **you** incurred on account of such **claim** between covered **loss** and non-covered **loss**.

## 12. SEPARATION OF INSUREDS

Except with respect to the Limit of Liability, deductible and any rights or obligations assigned to the **named insured**, this insurance applies:

**a.** As if each **insured** were the only **insured**; and

**b.** Separately to each **insured** against whom a **claim** is made.

## 13. CONFORMANCE TO STATUTE

The terms of this **policy** which are in conflict with the statutes of the state in which this **policy** is issued are amended to conform to those statutes.

## 14. SECTION TITLES

The titling of sections and paragraphs within this **policy** is for convenience only and will not be interpreted as a term or condition of this **policy**.

## 15. INNOCENT INSUREDS

In the event that coverage under this **policy** would be excluded, suspended or lost because any of **you** concealed a **claim** from **us**, **we** will cover any other of **you** who did not participate in, acquiesce in or fail to promptly notify **us** of this concealment, provided that **you** complied with all other **policy** provisions.

In the event that coverage under this **policy** would be excluded, suspended or lost because of a dishonest, criminal, malicious, or fraudulent act, error, or omission by one or more of **you** under Exclusions **1.a.**, **1.b.**, **1.h.**, **2.a.** or **2.b.** we will cover any other of **you** who did not participate in, acquiesce in or fail to take appropriate action when **you** discovered the conduct, provided that **you** complied with all other **policy** provisions.

**We** have the right to recover against any **insured** responsible for dishonest, criminal, malicious or fraudulent acts errors, omissions, or discrimination, or concealment, or any other illegal act, whether or not intentional, for any **claim expenses** or **damages** paid under this section.

## 16. POLICY DISPUTES

If there is a dispute between **you** and **us** in the interpretation, validity, construction or enforceability of this **policy**, the dispute will be referred to non-binding mediation prior to the initiation of any legal proceeding. **We** both agree to meet with a qualified mediator in a good faith effort to negotiate a resolution of the dispute unless **we** and **you** both agree in writing to waive this provision. **We** and **you** agree to split the cost of the mediator equally. If **you** and **we** cannot agree on the specifics of the mediation, including but not limited to date, time, and/or mediator, the mediation process will instead follow the Commercial Mediation Procedures of the American Arbitration Association in effect at the inception of this **policy.** The mediation will continue until the dispute is resolved; or the mediator notifies **you** and **us** that it is unlikely that the dispute will be resolved through mediation; or any party elects to end the mediation.

**You** have thirty (30) days to accept **our** written invitation to participate in mediation. Refusal to participate in mediation, respond to a request to participate in mediation, or, after agreeing to participate, refusal to agree to terms of mediation, or to pay **your** share of mediation expenses will result in a waiver of this clause.

## 17. BANKRUPTCY

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this **policy**.

## 18. LIBERALIZATION

If **we** adopt any revisions to the terms and conditions of this **policy** form to provide more coverage without an additional premium charge during the **policy** term, the broadened coverage will immediately

apply. However, the broadened terms and conditions will not apply to any **claims** that were first made against **you** prior to the effective date of the revision.

**19. NOTICES**

Any notices required to be given by an **insured** will be submitted in writing to the **company** or its authorized representative. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

# CERTAIN CLAIM EXPENSES IN ADDITION TO POLICY LIMITS ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: THE HENDRICKSON LAW FIRM, P.C.        Policy Number: LHC A353960 02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 06/30/2017 modifies the following:

**A. SECTION B – DEFENSE, SETTLEMENT & EXHAUSTION OF LIMITS (INCLUDED IN THE LIMIT OF LIABILITY)** is replaced by the following:

**DEFENSE, SETTLEMENT & EXHAUSTION OF LIMITS**

**We** have the right to appoint counsel, and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you. You** may recommend counsel to **us**. **We** may accept that recommendation of counsel and such acceptance will not be unreasonably withheld, provided such counsel agrees to comply with **our** litigation management guidelines and agrees to accept **our** hourly fee payment. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

**Our** duty to defend any **claim** or pay any amount as **damages** or **claim expenses** will cease when **our** Limit of Liability has been exhausted. Upon exhaustion of the Limit of Liability, **we** will tender control of the defense to the **named insured**. The **named insured** agrees to accept this tender of defense.

**We** will not settle a **claim** without the consent of the **named insured**, which will not be unreasonably withheld. If the **named insured** refuses to consent to a settlement **we** recommend that is acceptable to the claimant, then **our** liability for the **claim** will not exceed the amount for which the **claim** could have been settled, plus the **claim expenses** incurred up to the date of such refusal, or the applicable Limit of Liability, whichever is less. After the time of the **named insured's** refusal, **we** will have the right to withdraw from further defense of the **claim** by tendering control of the defense to the **named insured** who will be responsible for all **damages** and **claims expenses** incurred thereafter. For the purpose of this section, settlement includes, but is not limited to, any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

The **named insured** is responsible for any fees or costs charged by a lawyer defending **you** or any other expenses incurred without **our** written consent.

**B. SECTION C – LIMIT OF LIABILITY AND DEDUCTIBLE,** Paragraph **1.** is replaced by the following:

**1. LIMIT OF LIABILITY**

The Limit of Liability shown in the Declarations as per claim is the most **we** will pay for the sum of all **damages** arising out of a single **claim** or a series of **related claims**, regardless of the number of persons or entities insured under this **policy**, number of **claims** made or the number of persons or entities making **claims** during the **policy period** or during the **extended reporting period**, if any.

If **related claims** are subsequently made against **you** and reported to **us**, all such **related claims**, whenever made, will be considered a single **claim** first made and reported to **us** within the **policy period** in which the earliest of the **related claims** was first made and reported to **us**.

The Limit of Liability shown in the Declarations as Aggregate is the most **we** will pay for the sum of all **damages** for all **claims** under this **policy**.

**C. SECTION C. – LIMIT OF LIABILITY AND DEDUCTIBLE**, Paragraph **2.b.** is replaced by the following:

**b. Claim expenses** are in addition to the Limit of Liability. The most **we** will pay for the sum of all **claim expenses** arising out of a single act, error, or omission or a series of related acts, errors or omissions**,** regardless of the number of **claims** made or the number of persons or entities making **claims**, will not exceed, in total, an amount equal to the Each Claim limit shown on the Declarations, or $1,000,000, whichever is less.

The most **we** will pay for the sum of all **claim expenses** for all **claims** first made and reported to **us** during the **policy period** or during the **extended reporting period**, if any, is the Each Claim limit shown

in the Declarations or $1,000,000, whichever is less. After the total amount available to pay **claim expenses** has been exhausted, **claim expenses** will be subtracted from the Each Claim limit of liability, with the remaining limit, if any, being available to pay for  **damages**.

All other terms and conditions remain unchanged.

# MONTANA EXTENDED REPORTING PERIOD ENDORSEMENT – INDIVIDUAL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: <u>THE HENDRICKSON LAW FIRM, P.C.</u>

Policy Number: <u>LHC A353960 02</u>

Issued by The Hanover Insurance Company.

This endorsement, effective 12:01 A.M. <u>06/30/2017</u> modifies the following:

For purposes of this endorsement only**, you** and **your** refer only to the individual **insured** scheduled below:

| Individual Insured | Retroactive Date |
|---|---|
| Kevin Sweeney | 07/01/1985 |

In consideration of **your** payment of the additional premium shown below, **we** will extend the time for reporting **claims** under this **policy** as set forth in **SECTION F – EXTENDED REPORTING PERIOD** of this **policy** until the expiration of the **extended reporting period** shown below.

This endorsement applies only to **your wrongful acts** that occurred on or after the **retroactive date** shown in the Declarations and before the individual **extended reporting period** effective date shown below. **Claims** must first be made and first reported to **us** after the individual **extended reporting period** effective date and prior to the individual **extended reporting period** expiration date shown below. However, if there is other insurance in effect on or after **your** individual **extended reporting period** effective date which covers **you** for such liability or **claim**, then that other insurance will render this coverage inapplicable, even though the Limits of Liability of the other insurance may be inadequate to pay all **losses** or **claims**.

**We** cannot cancel this endorsement except for nonpayment of premium. If **we** do not receive payment by the due date, **we** will cancel this endorsement as of the individual **extended reporting period** effective date shown below.

If the word "waived" is stated in place of an additional premium charge, this endorsement is being issued without additional cost to **you** as explained in **SECTION F – EXTENDED REPORTING PERIOD,** Paragraph **4.**

The Limits of Liability for this endorsement will be as shown in the Declarations. However, the limits available may be diminished or exhausted by prior **claim** payments.

From: Individual **Extended Reporting Period** Effective Date: <u>06/30/2017</u>     12:01a.m. Standard Time

To: Individual **Extended Reporting Period** Expiration Date: <u>Unlimited</u>     12:01a.m. Standard Time

If the word "unlimited" is stated in place of a date in the **extended reporting period** expiration date above, then there will be no expiration date for this endorsement.

**ADDITIONAL PREMIUM:**     <u>$waived</u>

All other terms and conditions remain unchanged.

# FIRST DOLLAR DEFENSE WITH NO SUBLIMIT ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: <u>THE HENDRICKSON LAW FIRM, P.C.</u>        Policy Number: <u>LHC A353960 02</u>

Issued by The Hanover Insurance Company.

This endorsement, effective 12:01 A.M. <u>06/30/2017</u> modifies the following:

**SECTION C – LIMIT OF LIABILITY AND DEDUCTIBLE,** Paragraphs **2.a.** and **2.c.** of **DEDUCTIBLE** are replaced by the following:

**2. DEDUCTIBLE**

    **a.** **You** will pay the deductible amount shown in the Declarations. The deductible applies to each **claim** and to all **damages**. Each of **you** is jointly and severally liable for these payments, regardless of **your** individual business arrangements. **We** will not be required to make any payment for **damages,** settlements reached, or judgments rendered in an otherwise covered **claim** unless and until **you** have paid the deductible in full. **You** must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which **you** and **we** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

    **c.** If **you** and **we** agree to use **mediation** to resolve any **claim** brought against **you** and if the **claim** is resolved by **mediation** within sixty (60) days of the suit or demand, **your** deductible obligation for that **claim** will be reduced by 50%. The maximum amount of any reduction is $ <u>10000</u>.

All other terms and conditions remain unchanged.



At Hanover Professionals, we are committed to providing timely and efficient claims assistance to our Insureds. Please follow these guidelines to help us help you.

**Notice of a Claim**

Report a claim to Hanover Professionals by regular mail, email, fax or Express Mail (overnight delivery) as soon as possible to provide timely notice as required by your Hanover Policy. Contact us at:

| Phone: 800.628.0250, option 1 x6281   Fax: 508.926.4789 |
| --- |

**Mailing Address:**

440 Lincoln Street

Worcester, MA 01653

**Report a claim via email**: spacctclaim@hanover.com

**Claims Requiring Expedited Handling**

Some claims are time sensitive. Please report such claims as soon as you become aware of them, and while allowing sufficient time for the carrier to investigate and meaningfully respond. Do not wait until the eve of the response deadline as it threatens our ability to timely respond. Those items include, but are not limited to:

You have been served with a summons and complaint

✓ You received a demand from a Claimant which expires on a date certain

✓ You received notice of a proceeding requiring an immediate answer or an answer within a limited timeframe

**Correspondence we need from you**

Please provide a written narrative of the circumstances surrounding the claim or potential claim. The narrative should include:

✓ The Named Insured

✓ The Insureds (i.e., the lawyers involved in the professional services issue), your policy number, and effective date of coverage

✓ The client (Claimant's) name, address, and telephone number (also include the name, address, and telephone number of the Claimant's attorney)

✓ The timeframe in which you provided professional services to the Claimant

✓ Whether your relationship with the Claimant is ongoing or has been terminated

✓ A brief summary of the services rendered

✓ The date the error (alleged error) occurred

✓ A brief summary of the alleged (potential) error -  please include the date you first became aware of the claim and the potential amount of damages that will be sought

✓ All pertinent letters or documents necessary for us to properly evaluate the claim (if there are numerous documents, please note this and provide those most pertinent)



## INFORMATION REGARDING
## EXTENDED REPORTING PERIOD ENDORSEMENT
## ("TAIL COVERAGE")

The enclosed **policy** provides coverage for **claims** reported during the **policy period**. Subject to the **policy's** terms and conditions, **your** firm and/or each of the individual firm members may purchase an **Extended Reporting Period** Endorsement, also known as "tail coverage", that will extend the time for reporting **claims** arising out of **professional services** rendered while the **policy** was still in effect although the **policy** may have been cancelled or non-renewed, or when a firm member leaves the firm or the practice of law.

The premium charged for the endorsement is expressed as a factor of **your policy's** annual premium.

| Length of "Tail Coverage" Offered | "Tail Coverage" Premium |
|---|---|
| 12 months coverage | 1.000 of last annual premium |
| 24 months coverage | 1.500 of last annual premium |
| 36 months coverage | 1.750 of last annual premium |
| 60 months coverage | 2.000 of last annual premium |
| 84 months coverage | 2.500 of last annual premium |
| Unlimited coverage | 3.000 of last annual premium |

*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact **your** agent or customer service representative for pricing specific to **your** situation and location.

# MONTANA – STATE AMENDATORY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Issued by The Hanover Insurance Company.

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

**A. SECTION F – EXTENDED REPORTING PERIOD** is replaced by the following:

**1. AUTOMATIC EXTENDED REPORTING PERIOD**

**You** will be entitled to an automatic **extended reporting period** for no additional premium. This extension is applicable to any **claim** made against **you** during the **policy period** and reported to **us** in writing during the sixty (60) days immediately following the **policy termination date**. This automatic **extended reporting period** applies only to **SECTION A – COVERAGE,** Paragraph **1. Professional Services Coverage.**

**2. OPTIONAL EXTENDED REPORTING PERIOD**

**We** will provide an optional **extended reporting period** as described below:

**a.** If this **policy** is canceled, terminated or nonrenewed, **you** will have the right, upon payment of an additional premium, to an extension of the reporting period for any **claim** against **you** first made and reported after the date upon which the **policy period** ends, but only with respect to **wrongful acts** committed after the applicable **retroactive date** and prior to the end of the **policy period** and otherwise covered by this **policy**. Such period will be referred to as the optional **extended reporting period**.

**1)** The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans in effect in **your** state on the date this **policy** was issued or last renewed.

**2)** **You** must request the optional **extended reporting period** in writing and must pay **us** the additional premium within sixty (60) days following the date of such cancellation, termination or nonrenewal. If **we** do not receive **your** request and premium payment within sixty (60) days following the date of such cancellation, termination or nonrenewal, **your** right to purchase the optional **extended reporting period** will cease.

**3)** If **we** cancel for non-payment of premium, **you** may purchase the optional **extended reporting period** only after any earned premium due **us** is paid within ten (10) days after the date of cancellation or **policy** expiration, whichever comes first.

**b.** **We** will not cancel the optional **extended reporting period** once premium is paid.

**c.** The optional **extended reporting period** will not increase any Limit of Liability stated in the Declarations. For the purpose of **policy** limits, the reporting periods are part of, not in addition to, the **policy period.**

If there is other valid and collectible insurance that would apply to a **loss** reported during the **extended reporting period,** then coverage under this section will not apply, even though the Limit of Liability for the other insurance may be inadequate to pay all **damages** and **claim expenses**. This optional **extended reporting period** applies only to **SECTION A – COVERAGE,** Paragraph **1. Professional Services Coverage.**

**3. DEATH OR DISABILITY EXTENDED REPORTING PERIOD**

If **you** die or become **totally and permanently disabled**, do not have any other available insurance coverage and meet **our** eligibility requirements, **we** will issue an **extended reporting period** endorsement of unlimited duration without cost to **you**, provided:

**a.** Death was not caused by a self-inflicted injury or misuse or abuse of any substance.

**b.** The total and permanent disability is established after the effective date of the **policy**. The disability must be a result of accidental bodily injury, physical illness or disease, and not arise out of any self-

inflicted injury or attempted suicide, or the abuse of intoxicants or controlled substances. **Your** inability to practice law must be certified in writing by a physician acceptable to **us**.

**4. RETIREMENT EXTENDED REPORTING PERIOD**

If **you** have retired completely from the practice of law, been continuously insured with **us** for the immediately preceding three (3) years, and have reached the age of 55, **we** will issue an **extended reporting period** endorsement of unlimited duration without cost to **you**.

**5. LOSS, SUSPENSION, REVOCATION OR SURRENDER OF YOUR LICENSE**

If **you** leave the practice of law as a result of loss, suspension, revocation or surrender of **your** license because of threatened, pending or actual disciplinary action, **you** are not eligible to purchase or receive an **extended reporting period** endorsement. If **you** have a solo practice when **you** lose **your** license, then neither the firm nor **you** are eligible to purchase or receive an **extended reporting period** endorsement.

**B. SECTION H – CONDITIONS,** Paragraph **1. Cancellation and Non Renewal** is replaced by the following:

**1. CANCELLATION AND NON RENEWAL**

**a.** **We** may cancel this **policy** for any reason if this **policy** has been in effect for less than sixty (60) days and is not a renewal **policy**, by mailing 10 days written notice of cancellation.

If this **policy** has been in effect for sixty (60) days or more or is a renewal of a **policy we** issued, then **we** may cancel only for the following reasons by mailing 10 days written notice:

**1)** For reasons specifically allowed by statute;

**2)** For failure to pay a premium when due; or

**3)** On grounds stated in the **policy** which pertain to the following:

    **a)** Material misrepresentation;

    **b)** Substantial change in the risk assumed, except to the extent that **we** should reasonably have foreseen the change or contemplated the risk when the contract was written;

    **c)** Substantial breaches of contractual duties, conditions, or warranties;

    **d)** Determination by the commissioner that continuation of the **policy** would place **us** in violation of the Montana Insurance Code;

    **e)** **Our** financial impairment; or

    **f)** Any other reason approved by the commissioner.

**b.** The **named insured** may cancel this **policy** for itself and all other **insureds** by written notice to **us** stating when thereafter the cancellation will be effective. If this **policy** is cancelled, earned premium will be computed in accordance with the customary short rate proportion of the premium.

**c.** **We** are not required to renew this **policy**. However, **we** will send written notice of **our** intent to nonrenew this **policy** to the **named insured** at least forty-five (45) days prior to expiration of the **policy period**. **We** will extend the period of coverage of the current **policy** at the expiring premium to comply with this notice requirement. The earned premium for any period of coverage beyond the expiration date will be considered pro rata based upon the rates in effect at the inception date of the expiring **policy**. **We** need not mail or deliver such notice if **you** have purchased insurance elsewhere, have accepted replacement coverage, requested or agreed to nonrenewal or this **policy** is expressly designated as nonrenewable.

**d.** Notices of cancellation or nonrenewal will be sent by first class mail to the last address known to **us** with a statement of the reasons for and effective date of such cancellation or nonrenewal. A copy of such notice will also be mailed to the **named insured's** agent of record. Proof of mailing is sufficient proof of notice.

**e.** If **we** decide to offer renewal terms, **we** will mail written notice of the renewal terms and a statement of the premium due to the **named insured** at least forty-five (45) days prior to the expiration date of the **policy**. The notice will clearly state the effect of nonpayment of the premium on or before the due date. **We** need not mail or deliver such notice if **you** have purchased insurance elsewhere, have accepted replacement coverage, requested or agreed to nonrenewal.

**f.** **We** will not amend the **retroactive date(s)** during a period of continuous coverage.

C. **SECTION H – CONDITIONS**, Paragraph **2. Representations and Application** is amended to add the following:

**2. REPRESENTATIONS AND APPLICATION**

No oral or written misrepresentation, omission, concealment of facts or incorrect statements will prevent recovery under this **policy** unless

**a.** Fraudulent;

**b.** Material either to the acceptance of the risk, or to the hazard assumed by **us**; or

**c.** **We** in good faith would not have:

**1)** Issued this **policy**,

**2)** Issued it at the same premium rate,

**3)** Issued the **policy** in as large an amount, or

**4)** Provided coverage with respect to the hazard resulting in the **loss**,

if the true facts had been made known to **us** as required by the application for this **policy**.

D. **SECTION H – CONDITIONS,** Paragraph **13. Conformance to Statute** is replaced by the following:

**13. CONFORMITY WITH MONTANA STATUTES**

The provisions of this **policy** conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the **insured** resides on or after the effective date of this **policy.**


All other terms and conditions remain unchanged.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

Frederick H. Eppinger
President

Charles Frederick Cronin
Secretary

A. Clifford Edwards
A. Christopher Edwards
John W. Edwards
EDWARDS LAW FIRM
1648 Poly Drive, Suite 206
Billings, Montana 59102
Telephone: (406) 256-8155
Facsimile: (406) 256-8159



*Attorneys for Plaintiff TGC, L.P.*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| TGC, L.P., a Limited Partnership, | Cause No. **DV 20-0128** |
| Plaintiff, | Judge: **GREGORY R. TODD** |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| HENDRICKSON LAW FIRM, P.C., a Professional Law Corporation; KEVIN C. SWEENEY, Individually; and DOES I-X, | |
| Defendants. | |

COMES NOW the Plaintiff, TGC, L.P. ("Plaintiff" or "TGC"), by and through its counsel,

Edwards Law Firm, and for its complaint against the Defendants, complains and alleges as follows:

1.      Plaintiff TGC is a Montana limited partnership organized under the laws of the

State of Montana with its principal place of business in the State of Montana.

2.      Defendant Hendrickson Law Firm, P.C. (the "Firm") is a Montana professional law

corporation licensed to do business in the State of Montana and with its principal place of business

in the State of Montana

**EXHIBIT
B**

3.    Defendant Kevin C. Sweeney ("Sweeney") is a resident of and a licensed attorney practicing law in the State of Montana. Upon information and belief, Sweeney was either employed, an agent, or otherwise affiliated with the Firm at the time he rendered professional services to TGC.

3.    The true names and capacities of DOES I-X are unknown to the Plaintiff, who therefore sues said Defendants under these fictitious names. On information and belief, Defendant DOES I-X, inclusive, (i) directly participated in or assisted in the performance of the wrongful acts and omissions described herein, although the full extent of their involvement is unknown at this time, OR (ii) conspired with the named parties in this case to perform the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time, OR (iii) acted as principals or agents, actual or ostensible, of other named parties in this case in performing the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time. Plaintiff thus believes that Defendant DOES I-X, inclusive, are liable for the damages and other relief sought in this case as participants, co-conspirators, principals or agents, or are otherwise necessary or indispensable parties to adjudication of the issues involved in this case. When the true names and capacities of DOES I-X, inclusive, have been ascertained, appropriate amendments of this Claim will be filed.

4.    Plaintiff is informed, believes and thereon alleges that at all times herein mentioned all Defendants, including DOES I-X, inclusive, (i) jointly perpetrated the acts described herein with their Co-Defendants, (ii) were the successors in interest to, or agents, principals, partners, joint venturers, or co-conspirators of their Co-Defendants in doing the things herein alleged and were acting within the scope and authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their Co-Defendants in doing the things

herein alleged and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by Plaintiffs in this action.

## JURISDICTION AND VENUE

5.      The District Court has jurisdiction pursuant to § 3-5-302, MCA. Venue is proper pursuant to § 25-2-118, and § 25-2-112, MCA, because Defendants are residents of Yellowstone County and because the Defendants committed acts or omissions resulting in the accrual of this action in Yellowstone County.

## FACTS COMMON TO ALL ALLEGATIONS

### I.      The TGC LOC

6.      In 2013, TGC retained the Firm and Sweeney to represent TGC in negotiating and documenting certain loan transactions with Vanity Shop of Grand Forks, Inc. ("Vanity Shop") and Vanity, Inc. (collectively "Vanity"). Sweeny and the Firm were the only counsel TGC engaged to represent it in the subject transactions.

7.      In 2012, Vanity entered into a credit agreement with Wells Fargo Bank, N.A. ("Wells Fargo"), under which Wells Fargo agreed to provide Vanity with a line of credit (the "Wells Fargo LOC"), secured by a first position lien on substantially all of Vanity's assets.

8.      In mid-2013, Vanity approached Diamond B Companies, Inc. ("Diamond B"), TGC's general partner, which provides administrative and strategic services to TGC and its affiliates, about obtaining a second line of credit for Vanity.

9.      By or before July of 2013, TGC consulted with Sweeney regarding the possible transaction.

10.     Based on the advice of Sweeney, TGC determined that it would provide an additional secured line of credit (the "TGC LOC"), which debt was to be subordinated to the Wells Fargo LOC.

11.     Sweeney represented TGC in negotiating and documenting the TGC LOC with Vanity and Wells Fargo, including receiving all agreements regarding the Wells Fargo LOC and copies of the UCC financing statements that Wells Fargo filed to perfect its security interest in Vanity's assets.

12.     Sweeney, as TCG's counsel, reviewed and commented on a Subordinated Credit and Intercreditor Agreement (the "TGC Credit Agreement"), drafted a Standby Security Agreement ("TGC Security Agreement"), and was otherwise responsible for ensuring that the TGC LOC was adequately documented.

13.     The TGC Credit Agreement initially contemplated that TGC would loan Vanity up to $2,000,000. The TGC Credit Agreement was later amended multiple times to allow Vanity to borrow in excess of $5,000,000.

14.     The TGC Security Agreement purported to grant TGC a second-position security interest in Vanity's inventory, equipment, accounts, and other rights to payment, payments intangible, deposit accounts, general intangibles, and contract rights.

15.     Based on Sweeney's representations, recommendations, amendments, advice, and drafting, on August 27, 2013, the parties, including TGC, executed the TGC Credit Agreement and the TGC Security Agreement.

16.     During negotiation and preparation of the documents memorializing the TGC LOC, Sweeney expressly acknowledged in writing the "need to file N.D. UCC Financing Statements on the assets of [Vanity]" in order to properly complete documentation of the TGC LOC.

17.     Sweeney and the Firm failed to ensure that the appropriate UCC financing statements were prepared and filed in accordance with the TGC Credit Agreement and the TGC Security Agreement.

18.     Sweeney and the Firm further failed to prepare a promissory note or otherwise properly document the TGC LOC and did not advise TGC of the risk that an insufficiently documented loan could be subject to recharacterization

## II.     The Vanity Shop Bankruptcy

19.     In early 2017, Vanity Shop prepared to file for bankruptcy.

20.     In the course of evaluating the impact of the Vanity Shop bankruptcy on TGC's ability to be repaid on the TGC LOC, Sweeney and the Firm discovered that Sweeney failed to prepare or file the necessary UCC financing statements to perfect TGC's security interest in substantially all of Vanity's assets at the time the documents memorializing the TGC LOC were executed.

21.     It was not until in February 2017 that Sweeney and the Firm filed with the North Dakota Secretary of State UCC financing statements on behalf of TGC on the assets of Vanity.

22.     Sweeney expressly admitted to TGC that it was "my failure" to timely file UCC financing statements on behalf of TGC. He acknowledged that such failure would likely cause TGC to be an unsecured creditor in the Vanity Shop bankruptcy and would cause it to receive less than if it had been a second-position secured creditor. He further admitted that such failure to timely file UCC statements was a "clear case of malpractice."

23.     On March 1, 2017, Vanity Shop filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of North Dakota (the "Bankruptcy").

24. Because Sweeney did not file the appropriate UCC financing statements until February 2017, TGC's security interest was avoidable as a preferential transfer under 11 U.S.C. § 547.

25. As a result, TGC was forced to file in the Bankruptcy a general unsecured claim in the amount of $5,248,777.43 (the then-outstanding balance of the TGC LOC) and share in distributions pro-rata with an unsecured class consisting of more than $25,000,000 in claims.

26. Wells Fargo was paid in full as a secured creditor from the proceeds of the Vanity Shop's bankruptcy estate. Vanity Shop's confirmed plan of liquidation provided that all secured creditors would be paid in full.

27. But for Sweeney's failure to timely file UCC financing statements, TGC's security interest would have been perfected, TGC would have been a fully secured creditor in the Bankruptcy, and TGC would have been paid in full pursuant to Vanity Shop's confirmed plan of liquidation.

28. The TGC LOC and TGC's unsecured claim were challenged by the Official Committee of Unsecured Creditors' (the "Committee"). In its objection, the Committee argued that TGC's debt should be recharacterized as equity due to the fact that no UCC financing statements were timely filed, that the TGC LOC was not documented by a standard form promissory note or loan agreement, and that the TGC LOC was otherwise insufficiently documented with respect to payment and maturity date.

29. TGC incurred costs and expenses opposing the Committee's objection to its proof of claim.

30.    To date, TGC has received only $712,500 in payment on its unsecured claim. Although administration of the Bankruptcy is ongoing, there is little to no prospect of additional recovery.

## FIRST CAUSE OF ACTION
### (Legal Malpractice Against Defendants)

31.    TGC reincorporates the foregoing paragraphs one through 30 as if fully set forth herein.

32.    Sweeney's actions were done as a licensed attorney at law and as an agent or employee for the Firm.

33.    Defendants and TGC had an attorney client relationship with respect to the TGC LOC. Defendants had a duty to use reasonable care and skill in their representation of TGC.

34.    Defendants breached such duties as set forth herein.

35.    TGC suffered injury as set forth herein.

36.    Defendants' conduct was the proximate cause of TGC's damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Negligence Against Defendants)

37.    TGC reincorporates the foregoing paragraphs one through 36 as if fully set forth herein.

38.    Defendants had a duty to TGC to act with reasonable care.

39.    Defendants breached such duties as set forth herein.

40.    TGC suffered injury as set forth herein.

41. Defendants' conduct was the proximate cause of TGC's damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff TGC prays for:

1. Judgment in favor of TGC and against Defendants;

2. Damages suffered by TGC as a result of Defendants' breaches of duty; and

3. Such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury of all of the issues in this action.

RESPECTFULLY SUBMITTED this _23_ day of January, 2020.

EDWARDS LAW FIRM

By: _____
A. Clifford Edwards
A. Christopher Edwards
John. W. Edwards
Attorneys for the Plaintiff
