Marshal L. Mickelson
Robert M. Carlson
CORETTE BLACK CARLSON &
MICKELSON
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH    :  406-782-5800
FAX  :  406-723-8919
mmick@cpklawmt.com
bcarlson@cpklawmt.com

Attorney for Defendant, Cross-Claimant and
Counter-Claimant
ASPEN AMERICAN INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| HANOVER INSURANCE GROUP, d/b/a HANOVER INSURANCE COMPANY,<br><br>              Plaintiffs,<br><br>    v.<br><br>ASPEN AMERICAN INSURANCE COMPANY; HENDRICKSON LAW FIRM, P.C.; KEVIN SWEENEY; and TGC, L.P, a limited partnership,<br><br>              Defendants. | Case No.: 1:20-cv-00056-SPW-TJC<br><br>**ANSWER OF ASPEN AMERICAN INSURANCE COMPANY TO AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, CROSSCLAIM, COUNTERCLAIM AND JURY DEMAND** |

## ANSWER TO AMENDED COMPLAINT

Defendant Aspen American Insurance Company ("Aspen") hereby answers

Plaintiff Hanover Insurance Group, d/b/a Hanover Insurance Company ("Plaintiff"

or "Hanover")'s Amended Complaint filed in the United States District Court for the District of Montana, Case Number 1:20-cv-00056-SPW-TJC, as follows:

1.     Without admitting that this action is properly brought under Montana's Uniform Declaratory Judgment Act, which is affirmatively denied, Aspen admits that this action is brought by Hanover under Montana's Uniform Declaratory Judgment Act and that by the action Hanover seeks a declaration that it does not owe a duty of defense of indemnity to the Hendrickson Law Firm, P.C. or Kevin Sweeny under a policy of insurance issued to the Hendrickson Firm by Hanover.

2.     Aspen admits that Hanover seeks the relief set forth in paragraph 2.

3.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 3, and therefore denies each and every allegation therein.

## PARTIES

4.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 4, and therefore denies each and every allegation therein.

5.     Aspen admits the allegations of paragraph 5.

6.     Aspen is informed and believes that the Hendrickson Law Fir, P. C. is a Montana law firm and except as so admitted, has neither knowledge nor

information sufficient to form a belief about the remaining allegations contained in paragraph 6, and on such basis denies the remaining allegations.

7.      Aspen is informed and believes that Kevin Sweeney is an individual and is a former attorney partner at the Hendrickson Firm. Except as so stated, Aspen is without knowledge or information sufficient to form a belief about the remaining allegations contained in paragraph 7, and on such basis denies the remaining allegations.

8.      Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 8, and therefore denies each and every allegation therein.

## JURISDICTION AND VENUE

9.      Aspen admits the allegations of paragraph 9.

10.     Aspen admits the allegations of paragraph 10.

11.     Aspen admits the allegations of paragraph 11.

## FACTUAL BACKGROUND

**A.      The Claim**

12.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 12, and therefore denies each and every allegation therein.

13.     Aspen is informed and believes that Hanover issued a Lawyers Professional Liability Insurance Policy to the Hendrickson Firm and thus admits that such a Policy was issued. Aspen has neither knowledge nor information sufficient to form a belief about the remaining allegations contained in paragraph 13, and therefore denies each and every allegation therein.

14.     Aspen admits that it issued Lawyers Professional Liability Policy No. LPP003153-03 to Named Insured The Hendrickson Law Firm, P.C., effective July 1, 2019 to July 1, 2020 ("Aspen Policy").  Aspen admits that the initial policy issued by Aspen to The Hendrickson Law Firm, P.C. incepted on July 1, 2017.

15.     Aspen admits that the basis for the Declaratory Complaint is the rights and obligations under the Hanover Policy.  Except as so admitted, Aspen denies each and every other allegation of Paragraph 15.

16.     Aspen admits that TGC, L.P. ("TGC") filed a complaint against Hendrickson Law Firm, P.C. and Kevin Sweeney in Montana Thirteenth Judicial District, Cause No. DV 20-0128.

17.     Aspen admits that the attached Complaint contains the allegations referenced in Paragraph 17 but Aspen has neither knowledge nor information sufficient to form a belief about the accuracy of the allegations contained in paragraph 17, and therefore denies each and every allegation therein.

18.     Aspen admits that TGC alleges that the appropriate UCC statements were not filed at the time the transaction was executed.  Aspen has neither knowledge nor information sufficient to form a belief about the remaining allegations contained in paragraph 18, and therefore denies each and every other allegation therein.

19.     Aspen admits that TGC alleges that in early 2017, Vanity Shop began preparing for bankruptcy.  Aspen has neither knowledge nor information sufficient to form a belief about the remaining allegations contained in paragraph 19, and therefore denies each and every other allegation therein.

20.     Aspen admits that TGC alleges that it retained Kaler to assist with the impending bankruptcy and that Kaler discovered that the UCC filing statements that were supposed to have used to secure TGC's interest in the Vanity Shop line of credit were never filed.

21.     Aspen admits the allegations of paragraph 21.

22.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 22, and therefore denies each and every allegation therein.

23.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 23, and therefore denies each and every allegation therein.

24.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 24, and therefore denies each and every allegation therein.

25.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 25, and therefore denies each and every allegation therein.

26.     Aspen has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 26, and therefore denies each and every allegation therein.

27.     Aspen admits that the TGC claim was reported to Aspen on November 7, 2019.  Aspen denies that the claim at issue was reported to Aspen on December 2, 2019.

28.     Aspen admits that it issued Lawyers Professional Liability Policy No. LPP003153-03 to Named Insured The Hendrickson Law Firm, P.C., effective July 1, 2019 to July 1, 2020.  Aspen denies each and every other allegation of paragraph 28.

29.     Aspen admits that Hanover issued a reservation of rights letter to Hendrickson Law Firm, P.C. on January 7, 2020, whereby Hanover denied coverage, while providing a defense under a reservation of rights.  Aspen has neither knowledge nor information sufficient to form a belief about the remaining

allegations of paragraph 29, and therefore denies each and every other allegation therein.

30.    Aspen admits the allegations of paragraph 30.

31.    Aspen admits the allegations of paragraph 31.

32.    Aspen admits the allegations of paragraph 32.

33.    Aspen admits the allegations of paragraph 33.

34.    Aspen admits that it sent a coverage position letter to Hendrickson Law Firm, P.C. on May 11, 2020 denying coverage for the TGC claim.

35.    Aspen denies each and every allegation of paragraph 35.

36.    Aspen denies each and every allegation of paragraph 36.

**B.    The Hanover Policy**

37.    Aspen admits that Exhibit A contains the language quoted in paragraph 37. Except as so admitted, has neither knowledge nor information sufficient to form a belief about the allegations contained in paragraph 37, and therefore denies each and every allegation therein.

<u>**COUNT ONE**</u>

**DECLARATORY JUDGMENT**

38.    Aspen re-pleads and incorporates by reference the foregoing paragraphs of this Answer as if fully stated herein.

39.     Without admitting that Hanover is entitled to any relief in this Action, Aspen admits that Hanover requests the Court determine the rights, obligations, and responsibilities of the parties under the Hanover Policy pursuant to Mont. Code Ann. § § 27-8-201 et seq., with respect to insurance coverage for the various claims asserted against the Hendrickson Firm and Sweeney.

40.     Aspen denies each and every allegation of paragraph 40, including without limitation that Hanover is entitled to any of the relief set forth in paragraph 40.

41.     Aspen denies each and every allegation of paragraph 41, including without limitation that Hanover is entitled to any of the relief set forth in paragraph 41.

42.     Aspen denies each and every allegation of paragraph 42, including without limitation that Hanover is entitled to any of the relief set forth in paragraph 42.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim for Relief)

43.     The Amended Complaint and the purported claims asserted therein fail to state facts sufficient to constitute a claim for relief against Aspen or a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Policy Terms, Definitions, Exclusions, Conditions and Limitations)

44.    Hanover's claims are barred or limited, in whole or in part, by the insuring provisions, definitions, exclusions, conditions, limitations, and other terms contained in the Aspen Policy.

## THIRD AFFIRMATIVE DEFENSE

### (Not Within Scope of Insuring Agreement)

45.    Hanover's claims are barred or limited, in whole or in part, because the TGC claim does not fall within the scope of any Insuring Agreement of the Aspen Policy or any definitions incorporated therein.

## FOURTH AFFIRMATIVE DEFENSE

### (Prior Knowledge)

46.    Aspen's liability is barred or limited, in whole or in part, because of The Hendrickson Law Firm's prior knowledge of the acts or omissions forming the basis of the TGC claim, pursuant to the Aspen Policy's Insuring Agreement which conditions coverage on no insured having a basis to believe that any act or omission might reasonably be expected to be the basis of a claim prior to the inception date of the first policy issued and continuously renewed by Aspen.

## FIFTH AFFIRMATIVE DEFENSE

### (Concealment or Misrepresentation on Policy Application)

47.     Aspen's liability is barred or limited, in whole or in part, to the extent any insured under the Aspen Policy negligently or intentionally made a material misrepresentation or omission on its application for the Aspen Policy.

## SIXTH AFFIRMATIVE DEFENSE

### (Claims Made and Reported Policy)

48.     Aspen's liability is barred or limited, in whole or in part, to the extent that the TGC claim was not first made against the insured and reported in writing to Aspen during the same policy period.

## SEVENTH AFFIRMATIVE DEFENSE

### (Other Insurance Clause)

49.     Aspen's liability is barred or limited, in whole or in part, to the extent Mr. Sweeney and/or The Hendrickson Law Group has insurance coverage for the TGC Claim pursuant to the Aspen Policy's Other Insurance clause, which provides, in part: "The insurance provided for in this policy shall be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent, or otherwise."

## EIGHTH AFFIRMATIVE DEFENSE

### (Policy Exclusions)

50.     Aspen's liability may be barred or limited, in whole or in part, by one or more exclusions contained or incorporated in the Aspen Policy.

## NINTH AFFIRMATIVE DEFENSE

### (Voluntary Payments or Assumption of Liability)

51.     Aspen has no liability to Hanover for any amounts or for any liability assumed by Mr. Sweeney and/or The Hendrickson Law Firm, P.C. voluntarily.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Perform Policy Obligations)

52.     Hanover's claims against Aspen are barred or limited, in whole or in part, to the extent Mr. Sweeney and/or The Hendrickson Law Firm, P.C. failed to perform policy obligations under the Aspen Policy.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Assist and Cooperate)

53.     Hanover's claims against Aspen are barred or limited, in whole or in part, to the extent an insured failed to assist and cooperate with and/or seek the consent of Aspen as required under the Aspen Policy or as implied or required by law.

## TWELFTH AFFIRMATIVE DEFENSE

### (Unreasonable or Unnecessary Costs)

54.     Aspen has no liability to Hanover for unreasonable or unnecessary costs and amounts incurred by Hanover.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

55.     Hanover's claims are barred or limited, in whole or in part, to the extent that Hanover or The Hendrickson Law Firm, P.C. fails or has failed to mitigate, minimize, or avoid any harm or damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Limits)

56.     Aspen's liability, if any, is limited by the applicable limits under the Aspen Policy.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Deductible)

57.     Aspen's liability, if any, is limited by the applicable Deductible under the Aspen Policy, which must be paid by the insured before Aspen has any obligation to make any payments.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Contribution, Set-off, Indemnification, Apportionment)

58.     Aspen's liability, if any, may be barred or limited, in whole or in part, by rights of contribution, set-off, indemnification, apportionment or other relief that Aspen may have against other parties.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Actual Controversy/Not Ripe/Prematurity)

59.     Hanover's claims against Aspen are barred or limited to the extent the Amended Complaint does not involve a justiciable controversy upon which declaratory judgment may be rendered, seeks an advisory opinion, is premature, and/or is not ripe for adjudication.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

Hanover's claims against Aspen may be barred or limited by the equitable doctrines of waiver, estoppel, and unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

To the extent any claims against Aspen may be barred or limited, in whole or in part, by applicable statute of limitations, there could be no recovery under the Aspen Policy.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Due Process of Law)

60.     Any loss by Aspen of coverage defenses, terms, and conditions of the contract, whether legal or factual, would deprive Aspen of due process of law.

## TWENTY FIRST AFFIRMATIVE DEFENSE

### (Reservation of Rights)

61.     Aspen specifically reserves its rights to amend its Answer and affirmative defenses and/or bring third-party actions as may be determined by further investigation and discovery.

## PRAYER

**WHEREFORE**, Aspen prays that judgment be entered against Hanover as follows:

1.     Dismissing with prejudice the Amended Complaint against Aspen in its entirety and adjudicating that Hanover is owed nothing from Aspen;

2.     Entering judgment declaring that Hanover does not have a valid cause of action against Aspen; and

3.     Awarding Aspen costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

# CROSSCLAIM

As and for its Crossclaim against Cross-defendants the Hendrickson Law Firm and Kevin Sweeney, Aspen hereby alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), in that there is complete diversity of citizenship between Aspen and Cross-defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Cross-defendants are residents of Montana and a substantial part of the events or omissions giving rise to the claim occurred in the District of Montana.

3.  There is an actual controversy over insurance coverage, including whether Aspen is entitled to Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

4.  Aspen American Insurance Company is, and at all relevant times was, an insurance company that is incorporated in Texas corporation with its principal place of business in Connecticut and is authorized to do business in the State of Montana.

5.  The Hendrickson Law Firm, P.C., is a Montana Corporation.

6.     Kevin Sweeney is an individual, and former attorney partner at the Hendrickson Law Firm, who on information and belief resides in Yellowstone County, Montana.   Upon information and belief, Sweeney retired from the Hendrickson Law Firm on June 30, 2017, effective July 1, 2017.

## FACTUAL BACKGROUND

### The TGC Claim

7.     TGC filed an underlying action against the Hendrickson Law Firm and Kevin Sweeney in Montana Thirteenth Judicial District Court, Cause No.: DV 20-0128 ("TGC Complaint").  A copy of the TGC Complaint is attached as **Exhibit A**.

8.     TGC alleges in the TGC Complaint that in 2013, the Hendrickson Law Firm and Kevin Sweeney were retained to represent TGC in relation to certain loan transactions with Vanity Shop of Grand Forks, Inc. ("Vanity Shop") and Vanity, Inc., (collectively, "Vanity").

9.     TGC further alleges in the TGC Complaint that in 2012, Vanity entered into a credit agreement with Wells Fargo Bank, N.A. ("Wells Fargo"), under which Wells Fargo agreed to provide Vanity with a line of credit (the "Wells Fargo LOC"), secured by a first position lien on substantially all of Vanity's assets.

10.     TGC further alleges in the TGC Complaint that in mid-2013, Vanity approached Diamond B Companies, Inc. ("Diamond B"), TGC's general partner,

which provides administrative and strategic services to TGC and its affiliates, about obtaining a second line of credit for Vanity.

11. TGC further alleges in the TGC Complaint that on or around July of 2013, TGC consulted with Sweeney regarding the possible transaction.

12. TGC further alleges in the TGC Complaint that, based on the advice of Sweeney, TGC decided to provide an additional secured line of credit (the "TGC LOC"), which would be subordinate to the Wells Fargo LOC.

13. TGC further alleges in the TGC Complaint that Sweeney represented TGC in negotiating and documenting the TGC LOC with Vanity and Wells Fargo, including receiving agreements regarding the Wells Fargo Loan and copies of the UCC financing statements that Wells Fargo filed to perfect its security interest in Vanity's assets.

14. TGC further alleges in the TGC Complaint that Sweeney reviewed and commented on certain documents and agreements in connection with the TGC LOC and was otherwise responsible for ensuring that the TGC LOC was adequately documented.

15. TGC further alleges in the TGC Complaint that, based on Sweeney's representations, recommendations, amendments, advice, and drafting, on August 27, 2013, the parties, including TGC, executed a TGC Credit Agreement and TGC Security Agreement, whereby TGC agreed to loan Vanity more than $5 million.

16.     The TGC agreement purported to grant TGC a second-position security interest in Vanity's assets.

17.     TGC further alleges in the TGC Complaint that Sweeney and the Hendrickson Law Firm failed to ensure that the appropriate UCC financing statements were prepared and filed in accordance with the TGC Credit Agreement and the TGC Security Agreement.

18.     TGC further alleges in the TGC Complaint that Sweeney and the Hendrickson Law Firm failed to prepare a promissory note or otherwise properly document the TGC LOC and did not advise TGC of the risk that an insufficiently documented loan could be subject to re-characterization.

19.     TGC further alleges in the TGC Complaint that Vanity Shop prepared to file for bankruptcy in early 2017.

20.     TGC further alleges in the TGC Complaint that, in the course of evaluating the impact of the Vanity Shop bankruptcy on TGC's ability to be repaid on the TGC LOC, Sweeney and the Hendrickson Law Firm discovered that Sweeney failed to prepare or file the necessary UCC financing statements to perfect TGC's security interest in substantially all of Vanity's assets.

21.     TGC further alleges in the TGC Complaint that in February 2017, Sweeney and the Hendrickson Law Firm filed with the North Dakota Secretary of State UCC financing statements on behalf of TGC on the assets of Vanity.

22. On February 10, 2017, Mr. Sweeney sent an email to TGC stating: It appears that my failure to timely file UCC statements on behalf of TGC at the time of the loan in 2013 is going to potentially cause a problem for TGC to be in second position in collection of its loan to the Vanity entities. Please see attached letter. This may mean that TCG will not be in a secured second space if everything is not taken by Wells Fargo, and that TGC will be deemed to be an unsecured creditor which gets a small piece of the assets not taken by Wells Fargo.

If Wells Fargo does not take everything, and TGC would otherwise take a larger share, then this appears to be a clear case of malpractice. Please advise if you wish for me to contact my malpractice insurance carrier and put them on notice about this potential claim.

23. TGC further alleges in the TGC Complaint that on March 1, 2017, Vanity Shop filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of North Dakota.

24. TGC further alleges in the TGC Complaint TGC was forced to file a general unsecured claim in the Vanity Shop Bankruptcy.

25. TGC further alleges in the TGC Complaint that but for Sweeney's failure to timely file UCC financing statements, TGC's security interest would have been perfected, TGC would have been a fully secured creditor in the Vanity

Shop Bankruptcy, and TGC would have been paid in full pursuant to Vanity Shop's confirmed plan of liquidation.

26.     TGC alleges that Sweeney and the Hendrickson Law Firm's conduct caused TGC damages in an amount to be determined at trial.

27.     TGC's counsel's sent Sweeney and the Hendrickson Law Firm a letter on September 19, 2019 letter providing formal notice to the Hendrickson Law Firm and Sweeney that TGC holds a claim for legal malpractice against them.

28.     TGC's counsel sent a follow-up letter to the Hendrickson Law Firm dated October 1, 2019 concerning the claim.

29.     The Hendrickson Law Firm first reported the TGC claim to Aspen on November 7, 2019.

**The Aspen Policy**

30.     Aspen issued a Lawyers Professional Liability Policy, Policy No. LPP003153-03 ("Aspen Policy") to The Hendrickson Law Firm, P.C. for the policy period July 1, 2019 to July 1, 2020, with a Deductible of $25,000 each claim and Limits of Liability of Liability of $2,000,000 each claim and in the aggregate. The Aspen Policy contains a retroactive date of July 1, 1985. A copy of the Aspen Policy is attached as **Exhibit B**.

31. Kevin Sweeney is a past member or employee of the Hendrickson Law Firm and qualifies as an Insured under the Aspen Policy with respect to professional services he performed on behalf of the Hendrickson Law Firm.

32. Aspen first provided Lawyers Professional Liability Insurance to The Hendrickson Law Firm on July 1, 2017 ("First Aspen Policy").

33. The Aspen Policy is a claim made and reported insurance policy that provides coverage to those claims that are first made against the insured and reported in writing to Aspen during the policy period.

34. The Aspen Policy, attached as Exhibit B, contains the following relevant provisions:

**I. INSURING AGREEMENTS**

**A. Coverage**

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or the **extended reporting period** (if applicable), by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

**1.** No **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim** prior to:

**a.** The inception date of the first policy issued and continuously renewed by the **Company**; or

**b.** The date the **Insured** first became a member or employee of the **Named Insured** or **predecessor firm**, whichever is later.

**2.** Neither the act or omission nor any **related act or omission** occurred prior to the **retroactive date**, if applicable.

## B. Defense

The **Company** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **claim** covered by this policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

## C. Settlement

The **Company** shall not settle any **claim** without the consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this policy will be reduced to the sum of the amount of **damages** for which the **claim** could have been settled, plus all **claim expenses** incurred up to the time the **Company** made its recommendation (the "Reduced Limit of Liability"). In addition, if the Reduced Limit of Liability is exhausted, the **Company** will pay fifty percent (50%) of all **claim expenses** and **damages** incurred thereafter, subject at all times to the applicable limit of liability as specified in Section II., Subsection A., Limits of Liability - Each **Claim** and Subsection B., Limit of Liability Policy Aggregate.

## D. Exhaustion of Limits

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment of **damages** or **claim expenses** or any combination thereof; or after the **Company** has

deposited the applicable limit of liability into a court of competent jurisdiction or tendered the applicable limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**. In such case, the **Company** shall have the right to withdraw from the further investigation, defense or settlement of such **claim** by tendering control of said investigation, defense and settlement of the **claim** to the **Named Insured**.

\* \* \*

## III. DEFINITIONS

\* \* \*

B.  **Claim means** a demand for money or services, naming the **Insured**, arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit, a request that an **Insured** waive a legal right or sign an agreement to toll a statute of limitations, or the institution of an arbitration proceeding against the **Insured.**

\* \* \*

## V. CONDITIONS

### A. Reporting of Claims and Potential Claims

**1.** The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice of any **claim** made against the **Insured** as soon as reasonably practicable.

**2.** If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all full particulars, including:

**a.** The specific act or omission;

**b.** The dates and persons involved;

**c.** The identity of anticipated or possible claimants;

**d.** The circumstances by which the **Insured** first became aware of the potential **claim**; and

**e.** Potential damages or injury;

Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

* * *

## C. Assistance and Cooperation

* * *

**3.** The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**. The **Company** shall have no obligation to pay or reimburse any person or entity for sums expended to defend any **claim** otherwise covered under this policy prior to written notice of such **claim** being received by the **Company**.

* * *

## F. Other Insurance

The insurance provided for in this policy shall be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent, or otherwise. This does not apply to insurance that is purchased by the **Named Insured** specifically to apply in excess of this insurance.

## <u>The Policy Applications</u>

35.     In the Hendrickson Law Firm's application for the First Aspen Policy, dated June 15, 2017, the Hendrickson Law Firm answered "No" to the following question: "After inquiry of all attorneys and staff of the Applicant, within the past 5 years have any past or present personnel…c. become aware of any act, error or omission or fee dispute which might become the basis of a claim against the Applicant or its personnel?

36.     The application for the First Aspen Policy provides:

> **NOTE: THIS POLICY FOR WHICH THIS APPLICATION IS BEING MADE SHALL NOT APPLY TO ANY INCIDENTS OR CLAIMS DETAILED OR WHICH SHOULD HAVE BEEN DETAILED IN THE QUESTION 25 a, b, or c ABOVE.**

37.     The Hendrickson Law Firm did not disclose the potential TGC claim in its June 15, 2017 application, even though Kevin Sweeney knew of the potential claim at the time the application was signed.

38.     The Hendrickson Law Firm likewise did not disclose the potential TGC claim in its May 31, 2019 application for the current Aspen Policy.

## COUNT ONE

## DECLARATORY JUDGMENT

39.     Aspen re-pleads and incorporates by reference the allegations set forth in paragraphs 1-38 above of Aspen's Crossclaim.

40.     Aspen requests the Court determine the rights, obligations, and responsibilities of the parties under the Aspen Policy pursuant to 28 USC §§ 28 2201 et seq., with respect to insurance coverage for the TGC Claim asserted against the Hendrickson Law Firm and Sweeney.

41.     Specifically, it appears, and Aspen requests the Court declare, that Aspen has no obligation to defend or indemnify the Hendrickson Law Firm or Sweeney in connection with the TGC Claim because:

(a) The TGC Claim does not fall within the scope of the Insuring Agreement of the Aspen Policy because of the Hendrickson Law Firm and Sweeney's prior knowledge of the TGC Claim, as the Aspen Policy conditions coverage on no Insured having a basis to believe that any act or omission, or related act or omission, might reasonably be expected to be the basis of a claim prior to the inception date of the first policy issued and continuously renewed by Aspen;

(b) Coverage for the TGC Claim does not exist based on the Hendrickson Law Firm's material misrepresentations or omissions in the applications for the Aspen policies;

(c) Coverage for the TGC Claim is barred or limited based on the Hendrickson Law Firm and Sweeney's breach of the Aspen Policy's Assistance and Cooperation provision, which requires that the

Hendrickson Law Firm and Sweeney not, except at their own cost, voluntarily assume or admit any liability or incur any expense without Aspen's prior written consent;

(d) Even if coverage were to exist under the Aspen Policy for the TGC Claim, coverage under the Aspen Policy would be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent; and

(e) Any other appropriate basis in the Aspen Policy or under Montana law as documented in discovery.

**WHEREFORE,** Aspen requests the following relief by way of declaratory judgment:

1. That this Court fully and finally adjudge the rights of the parties under the Aspen Policy pursuant to Montana law and 28 USC §§ 2201 et seq., declaring that Aspen has no duty to defend or indemnify the Hendrickson Law Firm or Sweeney in connection with the TGC Claim;

2. For its costs of suit; and

3. For such other declaratory relief as the Court deems just and equitable under the circumstances.

## <u>COUNTERCLAIM</u>

As and for its Counterclaim against Hanover Insurance Company, Aspen hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), in that Aspen's claims are so related to Hanover's claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the District of Montana.

3. There is an actual controversy over insurance coverage, including whether Aspen is entitled to Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

4. Aspen American Insurance Company is, and at all relevant times was, an insurance company that is incorporated in Texas corporation with its principal place of business in Connecticut and is authorized to do business in the State of Montana.

5.     Upon information and belief, Hanover Insurance Company is a Massachusetts corporation.

## FACTUAL BACKGROUND

### The TGC Claim

6.     TGC filed an underlying action against the Hendrickson Law Firm and Kevin Sweeney in Montana Thirteenth Judicial District Court, Cause No.: DV 20-0128 ("TGC Complaint").  A copy of the TGC Complaint is attached as **Exhibit A**.

7.     TGC alleges in the TGC Complaint that in 2013, the Hendrickson Law Firm and Kevin Sweeney were retained to represent TGC in relation to certain loan transactions with Vanity Shop of Grand Forks, Inc. ("Vanity Shop") and Vanity, Inc., (collectively, "Vanity").

8.     TGC further alleges in the TGC Complaint that in 2012, Vanity ·entered into a credit agreement with Wells Fargo Bank, N.A. ("Wells Fargo"), under which Wells Fargo agreed to provide Vanity with a line of credit (the "Wells Fargo LOC"), secured by a first position lien on substantially all of Vanity's assets.

9.     TGC further alleges in the TGC Complaint that in mid-2013, Vanity approached Diamond B Companies, Inc. ("Diamond B"), TGC's general partner,

which provides administrative and strategic services to TGC and its affiliates, about obtaining a second line of credit for Vanity.

10. TGC further alleges in the TGC Complaint that on or around July of 2013, TGC consulted with Sweeney regarding the possible transaction.

11. TGC further alleges in the TGC Complaint that, based on the advice of Sweeney, TGC decided to provide an additional secured line of credit (the "TGC LOC"), which would be subordinate to the Wells Fargo LOC.

12. TGC further alleges in the TGC Complaint that Sweeney represented TGC in negotiating and documenting the TGC LOC with Vanity and Wells Fargo, including receiving agreements regarding the Wells Fargo Loan and copies of the UCC financing statements that Wells Fargo filed to perfect its security interest in Vanity's assets.

13. TGC further alleges in the TGC Complaint that Sweeney reviewed and commented on certain documents and agreements in connection with the TGC LOC and was otherwise responsible for ensuring that the TGC LOC was adequately documented.

14. TGC further alleges in the TGC Complaint that, based on Sweeney's representations, recommendations, amendments, advice, and drafting, on August 27, 2013, the parties, including TGC, executed a TGC Credit Agreement and TGC Security Agreement, whereby TGC agreed to loan Vanity more than $5 million.

15.     The TGC agreement purported to grant TGC a second-position security interest in Vanity's assets.

16.     TGC further alleges in the TGC Complaint that Sweeney and the Hendrickson Law Firm failed to ensure that the appropriate UCC financing statements were prepared and filed in accordance with the TGC Credit Agreement and the TGC Security Agreement.

17.     TGC further alleges in the TGC Complaint that Sweeney and the Hendrickson Law Firm failed to prepare a promissory note or otherwise properly document the TGC LOC and did not advise TGC of the risk that an insufficiently documented loan could be subject to re-characterization.

18.     TGC further alleges in the TGC Complaint that Vanity Shop prepared to file for bankruptcy in early 2017.

19.     TGC further alleges in the TGC Complaint that, in the course of evaluating the impact of the Vanity Shop bankruptcy on TGC's ability to be repaid on the TGC LOC, Sweeney and the Hendrickson Law Firm discovered that Sweeney failed to prepare or file the necessary UCC financing statements to perfect TGC's security interest in substantially all of Vanity's assets.

20.     TGC further alleges in the TGC Complaint that in February 2017, Sweeney and the Hendrickson Law Firm filed with the North Dakota Secretary of State UCC financing statements on behalf of TGC on the assets of Vanity.

21.     On February 10, 2017, Mr. Sweeney sent an email to TGC stating:

It appears that my failure to timely file UCC statements on behalf of TGC at the time of the loan in 2013 is going to potentially cause a problem for TGC to be in second position in collection of its loan to the Vanity entities. Please see attached letter. This may mean that TCG will not be in a secured second space if everything is not taken by Wells Fargo, and that TGC will be deemed to be an unsecured creditor which gets a small piece of the assets not taken by Wells Fargo.

If Wells Fargo does not take everything, and TGC would otherwise take a larger share, then this appears to be a clear case of malpractice. Please advise if you wish for me to contact my malpractice insurance carrier and put them on notice about this potential claim.

22.     TGC further alleges in the TGC Complaint that on March 1, 2017, Vanity Shop filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of North Dakota.

23.     TGC further alleges in the TGC Complaint TGC was forced to file a general unsecured claim in the Vanity Shop Bankruptcy.

24.     TGC further alleges in the TGC Complaint that but for Sweeney's failure to timely file UCC financing statements, TGC's security interest would have been perfected, TGC would have been a fully secured creditor in the Vanity Shop Bankruptcy, and TGC would have been paid in full pursuant to Vanity Shop's confirmed plan of liquidation.

25.     TGC alleges that Sweeney and the Hendrickson Law Firm's conduct caused TGC damages in an amount to be determined at trial.

26.     TGC's counsel's sent Sweeney and the Hendrickson Law Firm a letter on September 19, 2019 letter providing formal notice to the Hendrickson Law Firm and Sweeney that TGC holds a claim for legal malpractice against them.

27.     TGC's counsel sent a follow-up letter to the Hendrickson Law Firm dated October 1, 2019 concerning the claim.

28.     The Hendrickson Law Firm first reported the TGC claim to Aspen on November 7, 2019.

**The Aspen Policy**

29.     Aspen issued a Lawyers Professional Liability Policy, Policy No. LPP003153-03 ("Aspen Policy") to The Hendrickson Law Firm, P.C. for the policy period July 1, 2019 to July 1, 2020, with a Deductible of $25,000 each claim and Limits of Liability of Liability of $2,000,000 each claim and in the aggregate.

The Aspen Policy contains a retroactive date of July 1, 1985. A copy of the Aspen Policy is attached as **Exhibit B**.

30.     Kevin Sweeney is a past member or employee of the Hendrickson Law Firm and qualifies as an Insured under the Aspen Policy with respect to professional services he performed on behalf of the Hendrickson Law Firm.

31.     Aspen first provided Lawyers Professional Liability Insurance to The Hendrickson Law Firm on July 1, 2017 ("First Aspen Policy").

32.     The Aspen Policy is a claims made and reported insurance policy that provides coverage to those claims that are first made against the insured and reported in writing to Aspen during the policy period.

33.     The Aspen Policy, attached as Exhibit B, contains the following relevant provisions:

### I. INSURING AGREEMENTS

#### A. Coverage

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or the **extended reporting period** (if applicable), by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

**1.** No **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim** prior to:

**a.** The inception date of the first policy issued and continuously renewed by the **Company**; or

**b.** The date the **Insured** first became a member or employee of the **Named Insured** or **predecessor firm**, whichever is later.

**2.** Neither the act or omission nor any **related act or omission** occurred prior to the **retroactive date**, if applicable.

## B. Defense

The **Company** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **claim** covered by this policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

## C. Settlement

The **Company** shall not settle any **claim** without the consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this policy will be reduced to the sum of the amount of **damages** for which the **claim** could have been settled, plus all **claim expenses** incurred up to the time the **Company** made its recommendation (the "Reduced Limit of Liability"). In addition, if the Reduced Limit of Liability is exhausted, the **Company** will pay fifty percent (50%) of all **claim expenses** and **damages** incurred thereafter, subject at all times to the applicable limit of liability as specified in Section II., Subsection A., Limits of Liability - Each **Claim** and Subsection B., Limit of Liability Policy Aggregate.

**D. Exhaustion of Limits**

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment of **damages** or **claim expenses** or any combination thereof; or after the **Company** has deposited the applicable limit of liability into a court of competent jurisdiction or tendered the applicable limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, or settlement of such **claim** by tendering control of said investigation, defense and settlement of the **claim** to the **Named Insured**.

\* \* \*

## III. DEFINITIONS

\* \* \*

**B.** **Claim means** a demand for money or services, naming the **Insured**, arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit, a request that an **Insured** waive a legal right or sign an agreement to toll a statute of limitations, or the institution of an arbitration proceeding against the **Insured.**

\* \* \*

## V. CONDITIONS

### A. Reporting of Claims and Potential Claims

**1.** The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice of any **claim** made against the **Insured** as soon as reasonably practicable.

**2.** If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all full particulars, including:

**a.** The specific act or omission;

**b.** The dates and persons involved;

**c.** The identity of anticipated or possible claimants;

**d.** The circumstances by which the **Insured** first became aware of the potential **claim**; and

**e.** Potential damages or injury;

Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

* * *

## C. Assistance and Cooperation

* * *

**3.** The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume, or admit any liability or incur any expense without the prior written consent of the **Company**. The **Company** shall have no obligation to pay or reimburse any person or entity for sums expended to defend any **claim** otherwise covered under this policy prior to written notice of such **claim** being received by the **Company**.

* * *

## F. Other Insurance

The insurance provided for in this policy shall be excess over all other valid and collectible insurance, whether such insurance is stated to be

primary, contributory, excess, umbrella, contingent, or otherwise. This does not apply to insurance that is purchased by the **Named Insured** specifically to apply in excess of this insurance.

## The Policy Applications

34.     In the Hendrickson Law Firm's application for the First Aspen Policy, dated June 15, 2017, the Hendrickson Law Firm answered "No" to the following question: "After inquiry of all attorneys and staff of the Applicant, within the past 5 years have any past or present personnel…c. become aware of any act, error or omission or fee dispute which might become the basis of a claim against the Applicant or its personnel?

35.     The application for the First Aspen Policy provides:

> **NOTE: THIS POLICY FOR WHICH THIS APPLICATION IS BEING MADE SHALL NOT APPLY TO ANY INCIDENTS OR CLAIMS DETAILED OR WHICH SHOULD HAVE BEEN DETAILED IN THE QUESTION 25 a, b, or c ABOVE.**

36.     The Hendrickson Law Firm did not disclose the potential TGC claim in its June 15, 2017 application, even though Kevin Sweeney knew of the potential claim at the time the application was signed.

37.     The Hendrickson Law Firm likewise did not disclose the potential TGC claim in its May 31, 2019 application for the current Aspen Policy.

**The Hanover Policy**

38. Hanover issued a Lawyers Professional Liability Insurance Policy, Policy No. LHC A353960 -02 (the "Hanover Policy"), to the Hendrickson Law Firm, with policy effective dates from July 1, 2016 to July 1, 2017.

39. Hanover issued Kevin Sweeney a Montana Extended Reporting Period Endorsement - Individual, on account of his retirement on June 30, 2017.

40. The Hendrickson Law Firm reported the TGC Claim to Hanover.

## COUNT ONE

## DECLARATORY JUDGMENT

41. Aspen re-pleads and incorporates by reference the allegations set forth in paragraphs 1-40 above of Aspen's Counterclaim.

42. Aspen requests the Court determine the rights, obligations, and responsibilities of the parties under the Aspen Policy pursuant to 28 USC §§ 2201 et seq., with respect to insurance coverage for the TGC Claim asserted against the Hendrickson Law Firm and Sweeney.

43. Specifically, it appears, and Aspen requests the Court declare, that Aspen has no obligation to defend or indemnify the Hendrickson Law Firm or Sweeney in connection with the TGC Claim because:

   (a) The TGC Claim does not fall within the scope of the Insuring

   Agreement of the Aspen Policy because of the Hendrickson Law Firm

and Sweeney's prior knowledge of the TGC Claim, as the Aspen Policy conditions coverage on no Insured having a basis to believe that any act or omission, or related act or omission, might reasonably be expected to be the basis of a claim prior to the inception date of the first policy issued and continuously renewed by Aspen;

(b) Coverage for the TGC Claim does not exist based on the Hendrickson Law Firm's material misrepresentations or omissions in the applications for the Aspen policies;

(c) Coverage for the TGC Claim is barred or limited based on the Hendrickson Law Firm and Sweeney's breach of the Aspen Policy's Assistance and Cooperation provision, which requires that the Hendrickson Law Firm and Sweeney not, except at their own cost, voluntarily assume or admit any liability or incur any expense without Aspen's prior written consent;

(d) The TGC Claim is covered by other insurance, specifically the Hanover Policy;

(e) Even if coverage were to exist under the Aspen Policy for the TGC Claim, coverage under the Aspen Policy would be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent; and

(f) Any other appropriate basis in the Aspen Policy or under Montana law as documented in discovery.

44.     If it is determined by this Court that the Aspen Policy does in fact afford coverage for the TGC Claim, Aspen requests the Court determine that the Aspen Policy is excess over the Hanover Policy.

**WHEREFORE,** Aspen requests the following relief by way of declaratory judgment:

1.     That this Court fully and finally adjudge the rights of the parties under the Aspen Policy pursuant to Montana law and 28 USC §§ 2201 et seq., declaring that Aspen has no duty to defend or indemnify the Hendrickson Law Firm or Sweeney in connection with the TGC Claim;

2.     That this Court fully and finally adjudge the rights of the parties under the Aspen Policy pursuant to Montana law and 28 USC §§ 2201 et seq., declaring that the Aspen Policy is excess over the Hanover Policy;

3.     For its costs of suit; and

4.     For such other declaratory relief as the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Aspen hereby requests a trial by jury of all issues so triable.

DATED this 10th day of August, 2020.

/s/ Marshal L. Mickelson
Corette Black Carlson & Mickelson
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2020, a copy of the

foregoing document was served on the following persons by the following means:

1 CM/ECF
2 Mail
3 Email

1.  Shane A. MacIntyre
    BROWN LAW FIRM, P.C.
    269 W. Front Street, Suite A
    Missoula, MT 59802
    Tel:    (406) 830-3248
    Fax:    (406) 830-3745
    Email:  smacintyre@brownfirm.com