IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| HANOVER INSURANCE GROUP, d/b/a HANOVER INSURANCE COMPANY,<br><br>  Plaintiff and Counter-Defendant,<br><br>vs.<br><br>ASPEN AMERICAN INSURANCE COMPANY, HENDRICKSON LAW FIRM, P.C.; KEVIN SWEENEY; and TGC, L.P., a limited partnership,<br><br>  Defendants and Counter-Claimants<br><br>and<br><br>HENDRICKSON LAW FIRM, P.C.; and KEVIN SWEENEY,<br><br>  Cross-Claimants and Cross-Defendants,<br><br>vs.<br><br>ASPEN AMERICAN INSURANCE COMPANY,<br><br>  Cross-Defendants and Cross-Claimants. | CV 20–56–BLG–DWM<br><br>ORDER |

1

This declaratory judgment action involves a number of claims, cross-claims, and counter-claims, and it involves two insurance policies: the Lawyers Professional Liability Insurance Policy, effective from July 1, 2016 to July 1, 2017 ("the Hanover Policy"), and the Lawyers Professional Liability Policy, effective from July 1, 2019 to July 1, 2020 ("the Aspen Policy"). Plaintiff Hanover Insurance Company ("Hanover") seeks a declaration as to whether it owes a duty to defend and indemnify Hendrickson Law Firm ("Hendrickson") and former Hendrickson partner Kevin Sweeney in an underlying action for legal malpractice in Montana district court brought by Defendant TGC, L.P. Defendant Aspen American Insurance Company ("Aspen") filed a counter-claim against Hanover, seeking a declaration that it owed no duty to defend or indemnify Hendrickson or Sweeney. Hendrickson and Sweeney filed a cross-claim against Aspen, as well as a counter-claim against Hanover, seeking declarations that they were entitled to a defense and indemnification from both insurers.

TGC filed a motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and the remaining parties filed competing motions for summary judgment. United States Magistrate Judge Kathleen DeSoto entered Findings and Recommendations on June 10, 2021, recommending that TGC's motion for partial judgment on the pleadings be denied. Judge DeSoto further recommended the motions for summary judgment from Hanover and Aspen

seeking declaratory judgments that they had no duty to defend or indemnify Hendrickson and Sweeney be granted while the motion for summary judgment from Hendrickson and Sweeney be denied.

Here, the Court adopts the legal standards Judge DeSoto applied to the partial motion for judgment on the pleadings and to the motions for summary judgment. (*See* Doc. 83 at 5–8.) The parties are entitled to *de novo* review of the specified findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). The Court reviews the findings and recommendations that are not specifically objected to for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Hendrickson and Sweeney timely filed objections, as did TGC. (Docs. 84, 86, 87; *see also* Docs. 89, 90, 91, 92.)

Hendrickson and Sweeney object on limited grounds,[1] specifically to Judge DeSoto's determination that the Retirement Extended Reporting Period Endorsement was affected by the Extended Reporting Period Endorsement. TGC objects to Judge DeSoto's determinations that (1) the reasonable expectations

---

[1] Hendrickson and Sweeney "seek *de novo* review of all of the conclusions of law contained in the [ ] Findings and Recommendations." (Doc. 84 at 2.) However, a blanket objection to "all conclusions of law" is insufficient to trigger de novo review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also* D. Mont. L.R. 72.3(a).

doctrine was not implicated, (2) the Hanover Policy and Endorsement were not ambiguous, (3) the notice-prejudice rule was inapplicable, and (4) a "claim" was made no later than February 2017.

After reviewing these objections, the Court adopts Judge DeSoto's Findings and Recommendations in full.[2]  As the parties are familiar with the factual and procedural background of this case, that background will not be reiterated here.

**I.     Hendrickson and Sweeney's Objection**

Hendrickson and Sweeney argue that Judge DeSoto incorrectly determined that the Extended Reporting Period Endorsement modified the Retirement Extended Reporting Period of the Hanover Policy, which resulted in the incorrect conclusion that Hanover had no duty to defend or indemnify Hendrickson and Sweeney.  According to them, the Endorsement should not be read to affect the Hanover Policy.  This argument is contrary to Montana law.

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy." Mont. Code Ann. § 33–15–316.  This means insurance policies should be read as a whole, and a policy's various parts should be read to give each part meaning and

---

[2] No objections were made regarding the Aspen Policy.

effect. *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017).

Here, Hendrickson and Sweeney contend that the Extended Reporting Period Endorsement should not be read to alter the terms of the Hanover Policy, specifically the Retirement Extended Reporting Period, because it was not part of the Hanover Policy as previously issued. (Doc. 84 at 3.) But, consistent with the Findings and Recommendations, the language of the Hanover Policy and of the Endorsement indicate that the Extended Reporting Period Endorsement was intended to modify the terms of the Policy, including the Retirement Endorsement. The Extended Reporting Period Endorsement states "THIS ENDORSEMENT CHANGES THE POLICY." (Doc. 2 at 32.) It then clarifies that "[c]laims must first be made and first reported to [Hanover] after the individual extended reporting period effective date and prior to the individual extended reporting period expiration date." (*Id.*) Further, the text of the Hanover Policy itself notes that it envisioned the possibility that the Extended Reporting Period Endorsement would be issued in the future, provided that the terms of the Retirement Extended Reporting Period were met. (*See id.* at 25 (explaining that if three conditions are met, "[Hanover] will issue an extended reporting period endorsement of unlimited duration without cost to [the insured]").)

5

Consistent with the terms of the Hanover Policy, Hanover issued the Extended Reporting Period Endorsement upon Sweeney's retirement. (*See id.* at 32.) As Hanover point out, this Endorsement could not have been included with the original Hanover Policy because, by the very terms of the Policy, it could not be issued until Sweeney fully retired from the practice of law. (Doc. 90 at 4–5.) Thus, reading the Hanover Policy and the Extended Reporting Period Endorsement together, *see* Mont. Code Ann. § 33-15-316, Judge DeSoto correctly determined that the Extended Reporting Period Endorsement modified the Policy.

Finally, to the extent that Hendrickson and Sweeney's insinuate that the Extended Reporting Policy Endorsement is not enforceable because it is not supported by consideration, that argument also fails. Hendrickson and Sweeney submit that "a novation or agreement to modify a contract requires consideration." (Doc. 84 at 4.) However, the Extended Reporting Policy Endorsement is not a novation or a separate agreement to modify the Hanover Policy. As discussed above, the terms of the Policy expressly envisioned the issuance of the Extended Reporting Period Endorsement, so it is not a novation. *Compare* (Doc. 2 at 25 (explaining that if three conditions are met, "[Hanover] will issue an extended reporting period endorsement of unlimited duration without cost to [the insured]")) *with Novation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act of substituting for an old obligation a new one that either replaces an existing

6

obligation with a new obligation or replaces an original party with a new party."). And, Hanover and Sweeney admit that Sweeney paid premiums related to the Hanover Policy, (Doc. 84 at 4), so the Policy and the Endorsement were supported by consideration.

Hendrickson and Sweeney's objections are consequently overruled.

## II. TGC's Objections

### A. Reasonable Expectations Doctrine

TGC advances two objections related to the reasonable expectations doctrine: (1) the doctrine should be applied so that the Extended Reporting Period Endorsement is read to serve the dual function of extending the reporting period for claims under the Hanover Policy and as an endorsement with its own coverage and reporting period, and (2) the doctrine should be applied to the notice provisions of the Hanover Policy because Sweeney had a reasonable expectation that he could notify Hanover of claims and potential claims during the applicable extended reporting period. Both of TCG's objections are unpersuasive because they ignore the prerequisite for the application of the reasonable expectations doctrine; that prerequisite is not present here.

"The [reasonable expectations] doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage because expectations which are contrary to the clear exclusion from coverage are not

objectively reasonable." *Meadow Brook, LLP v. First Am. Title Ins. Co.*, 329 P.3d 608, 611 (Mont. 2014) (internal quotation marks omitted). "The question of whether a provision is sufficiently 'clear' to render the reasonable expectations doctrine inapplicable is different from the question of whether a provision is ambiguous." *Id.* To answer the reasonable expectations doctrine question, courts look to the language of the relevant policy, apply the principles of contract interpretation, and compare the policy language to the insured's asserted expectations. *See id.* at 611–12. Contrary to TGC's objections, the terms of the Hanover Policy, which include the Extended Reporting Period Endorsement, clearly demonstrate an intent to exclude coverage for claims such as the one at issue here.

As Hanover points out, the definition of "extended reporting period" is a general definition that is most applicable to the automatic extended reporting period. (*See* Doc. 92 at 4; *see also* Doc. 2 at 21, 24.) By contrast, the Retirement Extended Reporting Period is more specific than and separate from the "extended reporting period" definition, and expressly states that an extended reporting period would be made applicable through "an extended reporting period endorsement." (Doc. 2 at 25.) This distinction is clear from the very language of the automatic extended reporting period and the Retirement Extended Reporting Period provision. Thus, TGC's argument that Sweeny and Hendrickson's interpretation

8

of the Extended Reporting Period Endorsement as serving dual purposes of extending existing coverage and providing its own, separate coverage is not reasonable. The plain language of the Hanover Policy and of the Extended Reporting Period Endorsement reveal that the Endorsement applies only to the Retirement Extended Reporting Period.

Similarly, contrary to TGC's second objection, Judge DeSoto did not err in not applying the expectations doctrine to the notice provisions of the Hanover Policy. TGC argues that the definition of "potential claim" was satisfied here, which would have triggered a different notice period, and Sweeney had a reasonable expectation under that notice period that he could have timely reported the "potential claim" and triggered coverage. (*See* Doc. 87 at 12–13.) As Judge DeSoto recognized, this argument is unpersuasive. It is dispositive that, under the terms of the Hanover Policy, there was no "potential claim" here. Rather, "Sweeney's February 10, 2017[] email plainly satisfies the Hanover Policy's definition of 'claim' . . . because it unequivocally shows Sweeney 'had knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services.'" (Doc. 83 at 22.) Thus, TGC's argument starts from an unreasonable premise—namely, that Sweeney had a reasonable expectation that the Endorsement created an extended reporting period for *potential* claims—that contravened the plain

9

language of the Hanover Policy. Because Sweeney's purported expectations were incompatible with the Hanover Policy as it is written, the reasonable expectations doctrine does not apply.

**B.     Policy Language**

TGC next argues that the Findings and Recommendations are flawed because the Hanover Policy's language is ambiguous, and Judge DeSoto incorrectly construed that ambiguity against the insureds, Hendrickson and Sweeney. TGC argues that the Hanover Policy is ambiguous because the definition of "potential claims" and "claims" conflict, and that ambiguity should have been construed in favor of an extended reporting period for Sweeney. (Doc. 87 at 15–16.) TGC also argues that, even if the Court accepts Judge DeSoto's reading of the Extended Reporting Period Endorsement as modifying the Retirement Endorsement, that interpretation creates ambiguity because it is unclear whether the Extended Reporting Period Endorsement creates an extended reporting period for claims first *made* under the Hanover Policy and first *reported* during the extended reporting period. (*Id.* at 16–20.) These objections are unconvincing.

As a starting point, despite TGC's arguments otherwise, the Hanover Policy's definitions for "claims" and "potential claims" are clear and consistent with each other. A "claim" exists, *inter alia*, when an insured "first receives oral or written information or have knowledge of specific circumstances involving a

particular person or entity which could reasonably be expected to result in a demand or suit for money or services." (Doc. 2 at 20.) This includes but is "not limited to when [the insured] first receive[s] an oral or written request to notify [Hanover] of a potential claim." (*Id.*) A "[p]otential claim means any wrongful act or any facts or other circumstances which may subsequently give rise to a claim." (*Id.* at 22.) Hendrickson and Sweeney concede that Sweeney's February 2017 email meets the definition for "claim." (*See* Doc. 83 at 22–23 (citing Doc. 58 at 7.)) Therefore, TGC attempts to fault Judge DeSoto for not concluding that the "claim" here could have also been a "potential claim." But the language of the Hanover Policy establishes that a "claim" cannot also be a "potential claim"; the reading TGC proposes would render the definitions of "claims" and "potential claims" tautological. Judge DeSoto's interpretation of these terms is consistent with the principles of contract interpretation, and she correctly interpreted the Hanover Policy as it is written, which resulted in the unambiguous conclusion that Sweeney's email satisfied the definition of a "claim."

TGC's second objection to Judge DeSoto's interpretation of the policy language closely resembles the objection it raised above regarding the notice periods: according to TGC, it is unclear whether an extended reporting period extends to claims "made" under the Hanover Policy but reported in the extended reporting period as it is extended under the Extended Reporting Period

Endorsement. (Doc. 87 at 17.) But, like the similar argument TGC raised above, this argument fails. This argument ignores the plain language of the Extended Reporting Period Endorsement, which states, "Claims must first be made and first reported to [Hanover] after the individual extended reporting period effective date and prior to the individual extended reporting period expiration date shown below." (Doc. 2 at 32.) TGC's argument would require disregarding the conjunctive "and" so that a claim could be "first made *or* first reported" during the extended reporting period effective date within the Extended Reporting Period Endorsement. Such a reading would disregard the plain language of the Hanover Policy and be contrary to rules of contract interpretation under Montana law. *See Meadow Brook, LLP*, 329 P.3d at 611 ("We accord the usual meaning of the terms and the words in an insurance contract, and we construe them using common sense.").

TGC's attempt to read the Hanover Policy and the Extended Reporting Period Endorsement as ambiguous contradicts of the plain language of the Policy and the Endorsement. There is no ambiguity, and therefore Judge DeSoto did not construe any ambiguity improperly against the insured.

### C. Notice-Prejudice Rule

TGC next argues that Judge DeSoto erred in failing to apply the notice-prejudice rule. According to TGC, the rule should have been applied because,

given the extended reporting periods under both the Policy and the Extended Reporting Period Endorsement, Hanover did not suffer prejudice as a result of the timing of Sweeney and Hendrickson's reporting of the claim. (Doc. 87 at 20–23.) TGC argues that, though the Montana Supreme Court has not addressed the notice-prejudice rule in the context of claims-made policies, it would likely conclude that the notice-prejudice rule would apply to such policies, including the Hanover Policy. TGC's hypothesis is incorrect.

As a general principle, the notice-prejudice rule "require[s] that the insurer demonstrate that it was materially prejudiced by not having received prompt notice or notice as soon as practicable of an event that could trigger coverage." *Atl. Cas. Ins. Co. v. Greytak*, 350 P.3d 63, 66 (Mont. 2015). But, "[t]o date, the Montana Supreme Court has only applied the notice-prejudice rule in the context of occurrence policies." *Capitol Specialty Ins. Corp. v. Big Sky Diagnostic Imaging, LLC*, 2019 WL 1245642, *6 (D. Mont. Jan. 30, 2019), *aff'd* 845 F. App'x 618 (9th Cir. 2021). "The Court has not directly addressed whether the notice-prejudice rule applies to claims-made policies," *id.*, such as the Hanover Policy at issue here. Trends in Montana caselaw indicate that, contrary to TGC's arguments, the Montana Supreme Court would not apply the notice-prejudice rule to claims-made policies. *See, e.g., Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349 (Mont. 2015) (adopting notice-prejudice rule to occurrence policies); *see also id.* at 370

n.2 (McKinnon, J., concurring in part and dissenting in part) ("Applying the notice-prejudice rule to a claims-made policy would essentially convert it . . . into a an occurrence policy."); *see also ALPS Prop. & Cas. Ins. Co. v. McLean & McLean*, 425 P.3d 651 (Mont. 2018) (omitting mention of the notice-prejudice rule to claims-made policy where insurance company received notice outside the policy's notice period).

Given the Montana Supreme Court's application of the notice-prejudice rule to occurrence policies and its silence on the application of the rule to claims-made policies, *Capitol Specialty*'s conclusion that the notice-prejudice rule does not apply to such policies is the better prediction of how the Montana Supreme Court would decide the issue. *See Specialty Ins. Corp.*, 845 F. App'x at 620 ("To the extent that the *ALPS* decision left certain questions unanswered, there is no reason to presume that the district court's opinion about how the Montana Supreme Court would act was in error."). Nonetheless, TGC argues that Judge DeSoto erred in not applying "the Restatement's exception-to-the-exception" for claims-made policies because coverage under the Extended Reporting Period Endorsement was triggered, and so Hanover would not have been prejudiced because the extended reporting period of unlimited duration should have applied.

Again, TGC incorrectly assumes that Sweeney triggered coverage under the Extended Reporting Period Extension. As explained above, because the Extended

Reporting Period Endorsement requires that claims be first made and first reported in the extended period reporting period, and the claim at issue was not, coverage was not triggered under the Endorsement. Therefore, TGC's arguments about the applicability of the "exception-to-the-exception" of the notice-prejudice rule are inapposite. The notice-prejudice rule does not apply in this case.

D.   **Timing of the Claim**

TGC's final objection focuses on Judge DeSoto's conclusion regarding when the claim here was "made." According to TGC, a claim can only be "made" by a "claimant," and here that "claimant" is TGC. TGC then argues that no claim was made until Sweeney was retired and the Extended Reporting Period Endorsement was in effect. This objection is not well-taken.

TGC's argument is contrary to both the plain language of the Hanover policy and Montana case law. First, TGC's position ignores the Hanover Policy's definition of "claim." As stated above, under the Policy, a "claim" includes, *inter alia*, when an insured "first receives oral or written information or ha[s] knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services." (Doc. 2 at 20.) This includes but is not limited to "when [the insured] first receive[s] an oral or written request to notify [Hanover] of a potential claim." (*Id.*) TGC improperly tries to shift the onus of making a claim to the person or entity alleging

15

a wrong by the insured, but the language of the Policy is clear: a claim arises when *the insured* has knowledge of facts that could reasonably be expected to give rise to suit. In February 2017, Sweeney acknowledged he was aware of facts—failing to file UCC paperwork on behalf of TGC—that could give rise to a suit for money from TGC. (*See* Doc. 83 at 17 (citing Doc. 64 at ¶ 13).) Thus, he satisfied the Hanover Policy's definition of claim, and TGC's argument that he was not the appropriate party to "make a claim" is unpersuasive.

Second, TGC argues that Montana law is contrary to Judge DeSoto's conclusion that a claim was made no later than February 2017. TGC is wrong. Relying on *Schleusner v. Continental Casualty Co.*, 102 F. Supp. 3d 1148, 1152 (D. Mont. 2015), TGC argues that a "claim" requires "a claimant making a demand via a lawsuit, taking the stronger step of enforcing a claim via the courts," (Doc. 87 at 24). In *Schleusner*, "claim" was defined as "an oral or written demand received by the Insured for money or services, including a demand alleging person injury, arising out of an act or omission in the rendering of professional real estate services." 102 F. Supp. 3d at 1152. Thus, *Schleusner* concluded that the definition of "claim" was satisfied when the insured "received notice of the underlying lawsuit, not . . . when the underlying suit was initially filed." *Id.* But the definition of "claim" is materially different here, and the Hanover Policy, unlike the policy in *Schleusner*, does not require the insured to "receive" a demand for money or

16

services to find a claim present. Therefore, TGC's reliance on *Schleusner* to demonstrate that a claim is not present until a lawsuit is filed is unpersuasive because such a requirement would contravene the plain language of the Hanover Policy.

### III. Conclusion

Upon *de novo* review of the Findings and Recommendations to which the various parties specifically object, the Court agrees with Judge DeSoto's determinations. The objections are overruled. There being no clear error in Judge DeSoto's remaining findings and recommendations,

IT IS ORDERED:

(1) Judge DeSoto's Findings and Recommendations, (Doc. 83), are ADOPTED IN FULL.

(2) Defendant TGC's motion for partial judgment on the pleadings, (Doc. 44), is DENIED.

(3) Hanover's motion for summary judgment, (Doc. 53), is GRANTED to the extent it seeks a declaratory judgment stating that it has no obligation to defend and indemnify Hendrickson or Sweeney under the Hanover Policy. The motion is DENIED to the extent it seeks attorney fees.

(4) Hendrickson and Sweeney's cross-motion for summary judgment, (Doc. 57), is DENIED.

(5) Aspen's cross-motion for summary judgment against Hanover and on Hendrickson's cross-claim, (Doc. 62), seeking a declaration that it has no obligation to defend and indemnify Hendrickson or Sweeney under the Aspen Policy is GRANTED.

(6) There being no further issues for the Court to address, the Clerk is directed to enter judgment consistent with this Order and close the case.

DATED this 25th day of August, 2021.

Donald W. Molloy, District Judge
United States District Court